Harold T. Gabrity, J.
This court has become increasingly concerned with a situation fraught with danger to the freedom and rights of individuals. It is a particularly vital matter since the persons involved are usually incapable of asserting their rights and privileges in their own behalf.
I refer to what has become a practice of virtually wholesale commitments to mental institutions without, in my opinion, full assurances and safeguards that constitutional requirements have been met.
My records indicate that during the past year approximately 50 to 60 petitions were presented to me each month for the commitment of allegedly mentally ill persons.
These petitions are printed forms and the information supplied is, to put it rather mildly, so meagre as to convey little real information concerning the patient. Neither the petitions nor the physicians’ certifications are verified or acknowledged. Invariably the court is requested to dispense with personal *913 service on the alleged incompetent for the stereotyped reason that “to do so would unduly disturb the patient ”.
These proceedings, based on section 74 of the Mental Hygiene Law, seek to confine such persons to a mental institution for a period of only 60 days. Under subdivision 7 of the said statute, however, the mere filing of a certificate in the County Clerk’s office within 60 days of the order — and with no further court action or review — continues the confinement of a mentally ill person in such institution on a permanent basis.
"Whether the commitment is permanent or for a period of 60 days — and most certainly where it is permanent — there should be true due process and judicial review. There is no other way in which the constitutional and legal rights of such persons can be adequately protected.
Incarceration, whether called hospitalization or by other euphemism, means depriving a person of liberty. No matter how sweetly disguised or delicate the language, involuntary confinement is a loss of freedom.
I use this occasion to advise both public and private institutions that henceforth, I shall not sign any order based upon an unverified petition or medical certification. Furthermore, unless the most compelling reasons are set forth, I shall not dispense with personal service upon the alleged incompetent or his next of kin.
It is my further firm conviction that no person should be placed in any such institution without an opportunity to be heard, or by someone in his behalf. I shall accordingly make myself available to conduct such hearings at the hospital if appearance by the patient in court is deemed inadvisable. Such hearings can be scheduled prior to the opening of court or after the close of the regular court day.
I do not believe it is imposing upon the court or others involved in such proceedings to devote the necessary time to prevent possible miscarriages of justice.
Lest it be thought that the court is exaggerating the problem, since I have been on the Bench, despite the hundreds who havé been so confined, only one writ of habeas corpus on behalf of a mentally ill person has been presented. It is uncomfortably significant that in that single instance the writ was sustained and the patient discharged. The involuntary patient was an old man whose only difficulty was that he was hard of hearing. This diagnosis was made in open court by an exceptionally well-qualified psychiatrist.
There is always the danger of allowing the judicial process to become a matter of rote and routine. We have perhaps reached *914 that unhappy state in these proceedings; but it is not too late to call a halt.
That these changes may result in additional work and inconvenience to the court’s personnel, those of the institutions as well as myself is of no importance whatever when weighed against the rights and dignities of persons who are under the protection of the courts and our laws. Our courts must zealously guard and preserve their vast powers. Speed is not necessarily synonymous with justice; nor is it desirable that our courts degenerate into assembly lines.
It is with reluctance that I grant the within petition; but I am constrained to do so having given no prior indication of my views and the new procedures I intend to follow. An amended proposed order, however, is to be submitted with the customary provision for automatic finality deleted and provision made therein for appropriate proceedings and notice prior to permanent commitment in accordance with the within opinion. Submit order.
(Supplemental opinion.)
After rendering my initial opinion, I have had occasion to familiarize myself with the procedures employed in New York and Kings Counties in the commitment of allegedly mentally ill persons. In Kings County, it is the rule for the judge to conduct a personal interview in every instance. In New York County, which handles a tremendous number of such commitments, personal service is effected on the patient by the psychiatrist. In addition thereto, provision is made for service of notice upon a member of the patient’s immediate family or a next friend. If there is any question as to the propriety of ordering such commitment, the judge conducts a personal hearing.
It is my intention to follow the procedures which have been in effect in New York County for some time. It seems to me that by so doing, we shall have all reasonable and adequate safeguards to insure that no person is unlawfully or improperly committed to a mental institution.
With respect to the proposed order, I have spoken to an eminent psychiatrist who was retained by the patient’s family. The doctor is of the firm opinion that his patient requires continued hospitalization and treatment. Furthermore, the patient’s father retained an attorney to protect his son’s legal rights. The said attorney has appeared but does not oppose the signing of the order. Order submitted pursuant to the Mental Hygiene Law signed and filed.