Benjamin Brenner, J.
Voluntary transfer to a State mental institution upon a pink sheet form pursuant to section 73 of the Mental Hygiene Law was not requested of the aged senile as to whom this application is directed, apparently because he is 96 years of age. This was fortunate for the senile because it made a judicial hearing possible with the result that happily his daughter has now agreed to provide the custodial care that he requires.
The patient is described as having a happy mood with 1 ‘ gross memory impairment ” — quite understandable for a man of his great age. The diagnosis is the usual one, namely, chronic brain syndrome associated with cerebral arteriosclerosis. The added phrase “ with psychotic reaction, mild ” is the diagnostic phrase currently used to insure qualification for admission to a State mental institution. Yet all that the senile eoncededly needs is custodial attention in a hospital for the aged which is unavailable because the State and local governments have thus far failed to adequately supply such facilities.
I have previously called to the attention of the organized Bar (see N. Y. L. J., Jan. 29, 1958, p. 4, col. 1, editorial) that the pink form is being increasingly used by the Department of Mental Hygiene for the transfer and admission to State mental institutions, without judicial consideration, of most of the senile aged who do not make positive objection, and that it accounted for more than 1,000 such transfers within a period of nine months in 1957 from Kings County Hospital alone. I pointed out that this is a development of recent date, conceived as a technique for circumventing judicial sanction, due to much criticism by judges and doctors alike of certification procedures of aged seniles to State mental institutions as being morally wrong. This newly used technique effectively shunts seniles into involuntary confinement without awareness by them of their plight and without their actual approval or judicial surveillance. These unwanted seniles may not even hope to escape factually involuntary confinement because the possibility of private care, often provided at a judicial hearing, is denied to them and, of course, they cannot thereafter effect their own release.
Moreover, the denial of judicial hearing or sanction is based on a statute of questionable constitutionality because it is grounded on a fictitious consent given by one who eoncededly is confused and disoriented. Even if positive objection is not required by the Mental Hygiene Department, the consent thus extracted is dubious because the senile is not likely to understand that the admitting institution is a mental institution, *1086 even if he be told that it is. Often he is chagrined and humiliated following family rejection and has neither the will nor the capacity to object even if he be carefully advised. That he is aware of his right to object or of the significance of his failure to object is doubtful. In short, the pink sheet procedure, in my view, is little less than a ruse designed to circumvent the need for judicial consideration or review of the transfer of the senile to a mental institution. Thus unknowingly certified, without opportunity to secure private custodial care, we have assembly line incarceration, depriving the aged of their liberty of person and, as was said by Judge G-arbity (Matter of Neisloss, 8 Misc 2d 912, 913): “No matter how sweetly disguised or delicate the language, involuntary confinement is a loss of freedom.”
According to the Department of Mental Hygiene, the pink form procedure is followed because it has received official sanction and is in accord with section 73 of the Mental Hygiene Law. It is contended by those who favor it that it is applied only where relatives or friends petition for certification. But generally relatives are all too eager to rid themselves of the senile, though at judicial hearings they frequently undergo a change of heart and agree to provide the needed care. It is further contended that patients admitted under section 73 are less emotionally disturbed when a court appearance is obviated. They say that a commitment is itself ‘ ‘ fraught with stigma and the sound of doom to both patients and members of the family. ’ ’ Nothing can be further from the truth. Proceedings at the hospital are free of the courtroom atmosphere. No one is sworn to testify. The room in which the hearing is held has every appearance of easy informality. A psychiatrist and social workers are at hand to discuss the problem and to report findings. The aged person is excluded from the room if he is uncomfortable or physically unable to take part in the discussion and relatives and friends are put at their ease. If there are no relatives or friends willing to undertake custody, or other custodial provision is not possible, the court certification follows and involves no greater stigma than does the certification by the doctors. But though certification to a mental hospital is wrong in either case, the aged person has at least had a hearing or judicial review of his personal disposition in the last days or years of his life.
Finally, the contention that the pink slip procedure represents an effective means by which the aged seniles can obtain rapid medical care is quite unrealistic. The methods used for custodial care of the aged seniles at mental institutions are no *1087 different from those practiced in the admitting hospitals, though both are inferior to the care that could be applied' if special techniques were employed for seniles at hospitals for the aged. However, speedy transfer is of little importance because the time elapsing between admission and the judicial hearing is usually of short duration. Moreover, regardless of the purpose officially professed, namely, expedition of treatment, such ostensible purpose is quite outweighed by the need to protect the freedom of these people.
The suggestion by the Mental Hygiene Department that judicial hearings are tantamount to criminal proceedings is outrageous. That department readily admits that mental hospitals do not answer the need of seniles. To liken an informal and humane inquiry into the possibility of substituting home custodial care for that of custody in a mental institution to a criminal proceeding is an admission of ignorance about the actual nature of the proceeding. But no more reason exists for the summary bundling off of these seniles without hearing, court review, or at least court sanction, than exists for summary imprisonment without hearing of persons charged with crime. The aged are at least entitled to equal protection at a time when they are least capable of defending their right to personal freedom.
Private care having been assured to the senile involved, the petition has, on request by the court, been withdrawn.