Chief Judge Desmond.
This appeal brings us two questions: first, as to whether the order appealed from, entitled in this criminal cause, is appealable here since it is not one of the orders listed as appealable in section 517 of the Code of Criminal Procedure. The Appellate Division treated the application as beginning a civil special proceeding and this, we hold, was correct (see Code Crim. Pro., § 454, subds. [3], [5]).
The second law question presented by the appeal is as to the constitutionality of section 454 of the Code of Criminal Procedure, the first subdivision of which has been on the statute books for many years, the other subdivisions having been added in 1960. Section 454 says that when in a criminal case the defense pleads insanity and the jury acquits on that ground the court must order the defendant to be committed to the custody of the State Commissioner of Mental Hygiene to be placed in an appropriate institution in the Mental Hygiene or Correction Department approved by the head of such department. Subdivisions (2) to (3) say, in substance, that when, after commitment of such a defendant to the Mental Hygiene Department, the Commissioner thereof believes that the defendant may be discharged or released on condition without danger to himself or others, the Commissioner must apply for such discharge or release to the court, whereupon the court appoints psychiatrists to examine him and if the court on receiving the report of the psychiatrists shall order his discharge or release on condition. Subdivision (5) says that a committed person may make, to the court by which he was committed, an application for his *31 release or discharge following which the court must obtain a report from the Mental Hygiene Department and if the court thinks there is merit in the application shall hold a hearing, etc. Subdivision (6) says that any person so committed after a “ not guilty by reason' of insanity ’ ’ verdict may at any time during his commitment be transferred to an appropriate institution of the Mental Hygiene or Correction Departments approved by the heads of both departments.
In 1960, after he had shot and wounded three persons in Queens County, defendant was arrested and arraigned before a Magistrate and was committed, pursuant to another section of the Code of Criminal Procedure, to a hospital for psychiatric examination and report, this resulting in a determination that he was not mentally competent to stand trial. Pursuant to the Mental Hygiene Law (former § 74) he was committed to Matteawan State Hospital in November, 1960. In December, 1960 the Director of Matteawan issued a certificate (all this under Mental Hygiene Law, former § 74) certifying that defendant was mentally ill and in need of continued care and treatment. In March, 1961, in Queens County, defendant was indicted on five counts of assault, second degree, and carrying a dangerous weapon as a felony. In July of 1962 the Director of Matteawan certified that defendant Daily had recovered and could stand trial. He was returned to Queens County and pleaded not guilty by reason of insanity. In August, 1962, while in the city prison, he complained that he was ill and was sent to Bellevue Hospital for psychiatric examination and the Bellevue report said that he could understand the charges against him and make his defense although he was mentally ill.
On January 15, 1963, defendant’s jury trial on the indictment resulted in an acquittal on the ground of insanity whereupon the presiding Judge ordered him committed to the Mental Hygiene Commissioner. On January 18, 1963, on the approval of both the Mental Hygiene Commissioner and the State Correction Commissioner, Dally was again committed to Matteawan and there he is still confined. In October, 1963 he brought habeas corpus in Dutchess County, resulting in a hearing as to his mental condition and a dismissal of the writ. This present proceeding, apparently brought under subdivisions (2) and (3) of section 454, was commenced in May, 1965 and a hearing held *32 at the Criminal Term, Supreme Court. The petition prays that the commitment order of January, 1963 be vacated on the ground of unconstitutionality of section 454, or, in the alternative, for an order under subdivision (5) of section 454 that defendant be released, and also for an order that defendant be permitted to use part of his funds now held by the Director of Matteawan for the purpose of obtaining independent psychiatrists to examine defendant and report to the court. As required by subdivision (5) of section 454, the Director of Matteawan reported to the court in a letter dated May 28, 1965, in which he said that when defendant was recommitted to Matteawan after his acquittal he was given a diagnosis of ‘ ‘ paranoid condition ’ ’, that this diagnosis has been “retained” to the present time, and that the Director of Matteawan was ‘ ‘ not prepared to state that he could be discharged or released on condition without danger to himself or to others.”
The court denied the motion in all respects with an opinion in which it was held that section 454 is not unconstitutional as requiring a defendant so committed to prove his sanity. The court’s opinion mentions the dismissal of the October, 1963 habeas corpus writ and mentions also the pendency of a habeas corpus proceeding in the Federal District Court for the Southern District of New York. As to the application to obtain the use of defendant’s funds, the court stated that the proper way to accomplish this was through the appointment of a committee for defendant. The papers indicate that on this motion there was no effort by defendant’s counsel to show factually defendant’s present mental condition. Counsel stood on the same argument he makes on this appeal, that i.s, that section 454 is unconstitutional because: “It raised the presumption that a defendant who proves that he was insane at the time of an alleged crime is presumed to be insane at the time of trial if the trial results in acquittal, and he must thereafter prove his right to be at large.”
Subdivision (1) of section 454 is, as we have said, an old statute which was held constitutional in 1909 in People ex rel. Peabody v. Chanler (133 App. Div. 159, affd. 196 N. Y. 525). The arguments against present subdivision (1) were rejected in the Peabody case. In 1962, in Lynch v. Overholser (369 U. S. 705), the Supreme Court had before it a proceeding challenging *33 the validity of a section of the District of Columbia Code which, like our statute, provided that when a defendant was acquitted on the ground of insanity the court was to order his confinement in a mental hospital. The Supreme Court did not directly affirm the constitutionality of the statute since it held that the statute applied only to persons who, like our defendant, pleaded insanity, and not to persons like Lynch who had not so pleaded but who had been found insane by the Criminal Court Judge. However, without saying so, both the majority and dissenting opinions in the Lynch case seem to assume the constitutionality of such statutes as reasonable police power provisions for the protection of both the defendant and the public. The Supreme Court opinions mention that as of 1962 a number of States had similar statutory provisions.
In 1960, in Ragsdale v. Overholser (281 F. 2d 943), the Federal Court of Appeals for the District of Columbia unanimously held that this same District of Columbia statute, similar to our section 454, was not unconstitutional. The reasoning of the Peabody, Lynch and Ragsdale cases (supra) is sound. We see no reason why a man who has- himself asserted that he was insane at the time the crime was committed and has convinced the jury thereof should not in his own interest and for the protection of the public be forthwith committed for detention, examination and report as to his sanity.
As the Appellate Division said in Peabody (supra) long ago, the Legislature could and did limit the effect of such a “ not guilty because insane” verdict so that it would not be an absolute discharge but would result in the detention for such period as was necessary to determine whether insanity continued and, if so, whether defendant would be dangerous to himself or others if liberated (133 App. Div., p. 164). A similar idea is expressed in the Supreme Court’s majority Lynch opinion (369 U. S., supra, p. 715). We will remember that all we are passing on here is the constitutionality of this old law. The appellant can always (as he has done in the past in habeas corpus) challenge the validity of his continued detention by alleging and showing that he is not in fact insane. Also, he can make an application under subdivision (5) of section 454, as he has done here, and ask for a hearing as to his present condition. As remarked above, he did not in this proceeding ask the court *34 for any such hearing but stood on his contention that his original and continued detention was illegal because of the alleged unconstitutionality of the statute.
Appellant puts reliance on Baxstrom v. Herold (383 U. S. 107 [Feb., 1966]). Baxstrom after conviction and while in a State prison became mentally ill and was transferred to the State hospital at Dannemora, N. Y. When his sentence was about to expire the Dannemora Hospital Director petitioned the court under section 384 of the Hew York Correction Law and the court held a hearing at which the State submitted medical evidence that petitioner was mentally ill and in need of continued hospital care. The hearing Judge said that he did not object to Baxstrom’s being sent to a civil mental hospital but that section 384 left that decision up to the Mental Hygiene Department which had ex parte determined that Baxstrom should not be in a civil hospital. Baxstrom, therefore, remained at the Dannemora State Hospital which is for persons who have been sentenced to State prisons and have become insane. The United States Supreme Court held that it was an unconstitutional denial of equal protection of law to commit Baxstrom to a mental hospital without a jury trial at the expiration of his prison term since by section 74 of the Mental Hygiene Law any person civilly committed who is not a prisoner whose term is about to expire is entitled to a jury trial as to his mental competency. The Supreme Court held that there was no reasonable distinction as to a civil commitment between an ordinary citizen and a citizen whose term in a State prison is expiring. However, as pointed out above, the Federal cases and the Peabody case in this court (supra) have ruled that there is a reasonable ground for giving special treatment to a man who has been held not guilty because insane on his own plea to that effect. The Legislatures of this and other States have felt that .such a jury verdict creates a situation where public safety as well as the defendant’s safety require that he be committed and examined before returning to society.
So that appellant may not be deprived of any of his rights we will remit this proceeding to Criminal Term of Supreme Court, Queens County, for a hearing to be held pursuant to subdivisions (2), (3) and (5) of section 454. The issues there to be tried are whether appellant may be discharged or released *35 without danger to himself or to others, and, if that question be answered in the negative, whether he is so dangerously mentally ill as to require hospitalization in Matteawan State Hospital. To provide defendant with protection equal to that of other persons under the New York State statutes as to adjudications of mental incompetency we may and do read into subdivision (5) (see People ex rel. Morriale v. Branham, 291 N. Y. 312, 317; People v. Finkelstein, 9 N Y 2d 342) a provision for a jury trial of these issues, if appellant so requests. If it be determined as a result of the hearing that defendant while not dangerous to himself or others is mentally incompetent and in need of hospitalization the court shall recommit defendant to the State Commissioner of Mental Hygiene for confinement in a State civil hospital for the insane. He shall in that event not be confined in Matteawan.
To comply with the spirit if not the express language of the Baxstrom decision (supra) we hold that, before there can be any commitment to Matteawan State Hospital for the insane under section 454 procedures, a person must be accorded all the protections of sections 74 and 85 of the Mental Hygiene Law including a jury trial, if requested.
The part of the petition which prays for a release of petitioner’s funds brings up a discretionary question not reviewable in this court.
The order should be reversed and further proceedings had in accordance with this opinion. The certified question, being unnecessary, is not answered.