Joseph F. Hawkins, J.
The relator brings this writ of habeas corpus to effect his transfer to a “ civil mental institution ’ ’ to the end that further proceedings may be had pursuant to section 124 of the Mental Hygiene Law. As a corollary, a declaratory *950 judgment is sought that section 438 of the Correction Law is unconstitutional.
The relator, on September 5,1956, pleaded guilty to attempted assault, second degree. The then County Court, Kings County, deferred imposing sentence, referring the defendant to Kings County Hospital for psychiatric evaluation. Ultimately, he was sentenced to an indeterminate term at the Eastern Correctional School at Napanoch, pursuant to section 438. Although paroled in April of 1959, on June 27, 1961 the relator was returned to Napanoch' as a parole violator where he remained until October 10, 1966, on which date he was transferred to his present place of confinement, the Institution for Defective Delinquents at Beacon, New York.
Much of the legal argument presented has been rendered academic by virtue of the two seminal opinions of the United States Supreme Court: Baxstrom v. Herold (383 U. S. 107) and Specht v. Patterson (386 U. S. 605), particularly the latter which was decided during the pendency of the motion at bar. There is now little point in attempting to resolve the presumed sharp conflict of authority under New York law as embodied in People ex rel. Vischi v. Martin (8 N Y 2d 63) and Vona v. State (54 N. Y. S. 2d 453). In the former, the Court of Appeals is said to have equated section 438 with a criminal commitment procedure: in the latter, the 'Court of Claims deemed such confinement to be civil. The Supreme Court in Baxstrom and Specht {supra), however, has determined the "issue at bar and it does not appear to be of abiding significance that we determine whether detention under section 438 is essentially criminal or civil. The inescapable fact remains that the relator is in “ durance vile ” and, as in Matter of Neisloss (8 Misc 2d 912, 913): “ Incarceration, whether called hospitalization or by other euphemism, means depriving a person of liberty. No matter how sweetly disguised or delicate the language, involuntary confinement is a loss of freedom.”
Or as phrased most recently by the United States Supreme Court in Matter of Gault (387 U. S. 1): “ The fact of the matter is that, however euphemistic the title, a ‘ receiving home ’ or an ‘ industrial school ’ for juveniles is an institution of confinement ’ ’.
As to the impact of Baxstrom {supra) upon New York law, the Court of Appeals in its recent holding in People v. Lally (19 NY 2d 27, 34-35 [Dec. 30,1966]) by reading into subdivision (5) of section 454 of the Code of Criminal Procedure “ a provision for a jury trial ” so as ‘f to comply with the spirit if not the express language of the Baxstrom decision ”, virtually obliterated the prior distinctions, noting (p. 34): “ The Supreme *951 Court held that there was no reasonable distinction as to a civil commitment between an ordinary citizen and a citizen whose term in a State prison is expiring.”
Apart from Baxstrom {supra) and its profound impact on prior law, in Specht {supra) the subsequent unanimous ruling by the United States Supreme Court was that one convicted of a specific crime but sentenced under a so-called “ sex offenders act ” to an indeterminate term is denied equal protection and due process if such sentence was imposed without notice and a full hearing. We note particularly the language from United States ex rel. Gerchman v. Maroney (355 F. 2d 302, 312 [C. A. 3d]), quoted in Specht {supra, pp. 609-610): “ ‘ At such a hearing the requirements of due process cannot be satisfied by partial or nigg'ardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him.’ ”
What .the relator seeks here is not an especially radical change in New York law. In People ex rel. Morriale v. Branham (291 N. Y. 312, 317) (cited with approval in Lally, supra), Chief Judge Lehman, writing for an unanimous court, held in construing section 440 of the Correction Law: ‘ ‘ Unless the statute provides expressly or by necessary implication that an adjudication may be made without notice to the person whose detention or restraint is sought, we may reasonably find implicit in the statute a direction that the judicial decision and decree shall be made only in accordance with due process of law after notice and opportunity to be heard.”
It thus appears unnecessary to rule upon the constitutionality of section 438 of the Correction Law. The provision for notice and for a hearing can be read into the section as readily as was done in the fairly analogous situations which obtained in Morriale and Lally {supra). We further hold that the Mental Hygiene Law must be construed in pari materia, thus making applicable the procedural safeguards prescribed in section 135. We note, parenthetically, the amendments to section 438 (L. 1967, ch. 477), which become effective on September 1, 1967; but they have no bearing upon the issue at bar.
Passing references may be made to the very recent Supreme Court ruling (Matter of Gault, supra, p. 18), which extended the full protection of due process to juveniles, stating: ‘ ‘ unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure. * # * *952 The absence of procedural rules based upon constitutional principle has not always produced fair, efficient, and effective procedures. Departures from established principles of due process have frequently resulted not in enlightened procedure, but in arbitrariness.”
In sum, whatever procedural distinctions and niceties may hitherto have obtained, .they are no longer valid since the advent of Baxstrom, Specht and Lally (supra). The writ is sustained.