Ernst Rosenberger, J.
This case concerns CPL 330.20, dealing with the commitment, confinement, and release of a defendant acquitted on ground of mental disease or defect. It particularly concerns subdivision 1 of the statute which requires that upon the rendition of a verdict of acquittal by reason of mental disease or defect, the court must order the defendant to be committed to the custody of the Commissioner of Mental Hygiene to be placed in an appropriate institution. (The other five subdivisions deal variously with discharge, or release on condition, of the committed person based on application to the court, and recommitment within five years and transfer of a committed person to another institution. For the purposes of this opinion, we are not immediately concerned with these provisions).
Martin Henig, the petitioner herein, was acquitted of a homicide by reason of insanity after a trial in November of 1975. He brings an order to show cause requesting a hearing to be held prior to any commitment pursuant to the above statute.
Mr. Henig had been released on bail in June, 1973, more than two years before his trial. Since that time, he has undergone intensive psychotherapy. His treating psychiatrist has certified, not only that he is not dangerous to himself or anyone else, and not in need of hospitalization, but that hospitalization or incarceration may endanger his recovery.
Counsel for petitioner now attacks the provisions of CPL 330.20 insofar as it mandates commitment of a person acquitted by reason of insanity without a hearing. He claims that its provisions violate the due process and equal protection clauses of the United States Constitution. Further, he requests that if this court orders a hearing, certain criteria should be used to determine the need for hospitalization. In the alternative, if *934 the court should order commitment without a hearing, he requests that certain conditions attach to that commitment.
This court is cognizant of the decision in People v Lally (19 NY2d 27), which stated that subdivision (1) of section 454 of the Code of Criminal Procedure (now CPL 330.20, subd 1) was constitutional. The Court of Appeals in that decision stated (p 33): "We see no reason why a man who has himself asserted that he was insane at the time the crime was committed and has convinced the jury thereof should not in his own interest and for the protection of the public be forthwith committed for detention, examination and report as to his sanity.” However, Lally was decided in 1966, and since that time, the Supreme Court and the Court of Appeals have refined their perception of due process and equal protection as applied to mentally ill persons who become involved with the criminal justice system.
In the 1972 case of Jackson v Indiana (406 US 715), which treated pretrial commitment of a mentally ill person, the court stated that a person charged with a crime is entitled under the equal protection clause, to the same procedural and substantive protections afforded others not charged with a crime and who were committed under a State’s civil statutes.
The court, speaking through Justice Blackmun, stated (p 730): "Consequently, we hold that by subjecting Jackson to á more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses * * * Indiana deprived petitioner of equal protection of the laws under the Fourteenth Amendment.”
Insofar as due process is concerned, the court stated (p 738): "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual was committed.”
In Matter of Kesselbrenner v Anonymous (33 NY2d 161, 165), the Court of Appeals stated that "To subject a person to a greater deprivation of personal liberty than necessary to achieve the purpose for which he is being confined is, it is clear, violative of due process.”
In our case, Martin Henig is free. He has been out of prison and hospital since 1973. He has undergone intensive psychiatric and medical treatment. If this court were to carry out the mandated commitment without a hearing, as provided in CPL *935 330.20 (subd 1), it would subject him to a commitment which would have an unreasonable relation to the purpose for which it was intended (Jackson v Indiana, supra). It would subject him to a "greater deprivation of personal liberty than necessary to achieve the purpose” of confinement, and this would clearly violate the petitioner’s due process rights (Matter of Kesselbrenner v Anonymous, supra, p 165).
There is no reason why this petitioner cannot be examined on an out-patient basis as to the question of his present mental condition or the present need for commitment to a mental institution.
Further, the standards for commitment should be the standards applied to a civil commitment as stated in United States ex rel. Schuster v Herold (410 F2d 1071, 1082) "one who has been adjudicated not guilty by reason of insanity is entitled to the same procedures used to determine committability of an individual who is not otherwise before the court.”
In Schuster, the petitioner was a convicted person, not an acquitted one. The court held in that case that Schuster was to be given a hearing on the question of his sanity with substantially all the procedures as those granted to noncriminals who are involuntarily committed as patients in civil mental hospitals. Certainly an acquitted person is entitled to the same rights.
The purpose of commitment under CPL 330.20 (subd 1) is solely to determine the present mental condition of the acquitted person. It is to determine whether he is dangerous and is in need of treatment. That is actually the same determination as in a civil commitment. Although he was found to be insane at the time of the commission of the crime, he may not be insane at the time of his verdict of acquittal (Bolton v Harris, 395 F2d 642; Cameron v Mullen, 387 F2d 193).
In Baxtrom v Herold (383 US 107, 115), Chief Justice Warren held that "A person with a past criminal record is presently entitled to a hearing on the question whether he is dangerously mentally ill as long as he is not in prison at the time civil commitment proceedings are instituted.” One who is acquitted by reason of insanity at a time five years prior to his trial is entitled to a new determination of his mental condition based on present facts and with a minimum deprivation of his liberty.
Therefore, this court accepts the recommendation of the Mental Health Information Service in its amicus curiae brief. *936 It orders that the examination of the petitioner as to his present mental state pursuant to CPL 330.20 (subd 2) be conducted in an out-patient clinic of the New York State Department of Mental Hygiene.
The Department of Mental Hygiene shall designate a psychiatrist or psychiatrists to examine petitioner as an outpatient. The examination shall take place at a time and place within the metropolitan area, upon 10 days’ notice by the department to counsel for the petitioner. Further proceedings, if any, shall be on motion of the Department of Mental Hygiene.