Paul J. Yesawich, Jr. J.
Plaintiff, New York State Department of Mental Hygiene, moves pursuant to CPLR 3212 for summary judgment to recover the cost of caring for Michael Hudak, a patient at the Binghamton Psychiatric Center, and others being held in State mental hygiene facilities by reason of orders of the Broome County criminal court.
The facts are undisputed. In 1973 Hudak was acquitted of the charges of murder and attempted murder by reason of mental disease or defect by a Broome County Court jury. Following the mandate of CPL 330.20, the court ordered Hudak committed to the custody of the Commissioner of Mental Hygiene who in turn placed him in the Binghamton *355 Psychiatric Center where he still remains. Plaintiff has periodically billed defendants for the services rendered by it for Hudak’s care and treatment. Save for an initial payment of $3,635.90 defendants have refused to honor plaintiff’s payment demands. As of September 30, 1975 the outstanding balance was $32,742.30.
Plaintiff predicates defendants’ liability on subdivision (c) of section 43.03 of the Mental Hygiene Law which provides: "Patients receiving services while being held pursuant to order of a criminal court or for examination pursuant to an order of the family court shall not be liable to the department for such services. Fees due the department for such services shall be paid by the county in which such court is located.” (Emphasis added.) While defendants readily concede liability for fees incurred for services rendered patients held by virtue of an order of a criminal court of their county they maintain the commitment order was not such an order. Thus, the issue presented is whether orders committing defendants who, like Hudak, have been acquitted by reason of insanity are orders of a Criminal Court within the meaning of subdivision (c) of section 43.03 of the Mental Hygiene Law.
Defendants assert at the time the verdict of acquittal was rendered the criminal action thereupon terminated so that when the commitment order was issued the court was acting solely in the exercise of its civil jurisdiction. They contend their thesis is supported by People v Lally (19 NY2d 27) since it held a mentally ill defendant acquitted on the ground of insanity was entitled to civil commitment and, beyond that, because such defendants are adverted to as having the status of civil patients. (Matter of Lashway v Hanes, 78 Misc 2d 979, 985; People v McNelly, 83 Misc 2d 262, 269.) And, inasmuch as the commitment is a civil one and CPL 10.10 (subd 7) states: "a court specified herein which possesses civil as well as criminal jurisdiction does not act as a criminal court when acting solely in the exercise of its civil jurisdiction, and an order or determination made by such a court in its civil capacity is not an order or determination of a criminal court even though it may terminate or otherwise control or affect a criminal action or proceeding”, they conclude subdivision (c) of section 43.03 of the Mental Hygiene Law is inapplicable to them as it only imposes liability on account of services rendered those "being held pursuant to order of a criminal court.”
*356 Though eminently plausible, defendants’ argument is inconclusive for it fails to take into account CPL 330.20 (subd 1) which declares the committing court "must” order an individual acquitted by reason of mental disease or defect to an appropriate institution and, pending designation of that institution, "must” direct the sheriff to hold that defendant. Considering that it is the Legislature which commanded commitment, obviously it did not intend to have a not guilty because of insanity verdict equated with an absolute discharge nor to immediately place the defendant beyond the reach of the criminal court. That being so the construction of the statute advanced by defendants is unacceptable. People v Lally (supra) is consistent with this conclusion for not only did it sanction the concept that an application to vacate a commitment order constitutes the beginning of a civil proceeding, but it also reiterated the finding in People ex rel Peabody v Chanler (133 App Div 159, affd 196 NY 525) that: "the Legislature could and did limit the effect of such a 'not guilty because insane’ verdict so that it would not be an absolute discharge but would result in the detention for such period as was necessary to determine whether insanity continued” (People v Lally, supra, p 33).
Moreover, legislative history sustains plaintiff’s interpretation. From 1842, when the Legislature organized the State Lunatic Asylum (L 1842, ch 135) until 1965, the expense of maintaining an inmate of a State hospital confined thereto by reason of a court order originating out of a criminal action was defrayed by the county from which the inmate was committed. (Matter of Eaton v Onondaga County, 196 Misc 648, affd 279 App Div 1038; County of Jefferson v County of Oswego, 102 App Div 232, affd 186 NY 555; Mental Hygiene Law, § 79, repealed Sept. 1, 1965, L 1964, ch 738.) In 1965, after section 79 had been repealed, the State, and not the county, thereafter became obligated, at least until 1972, to maintain inmates committed after a verdict of acquittal owing to insanity. Subsequently, in 1972, subdivision (c) of section 43.03 of the present Mental Hygiene Law was enacted into law. Its language differs insignificantly from that of its predecessor, section 79. The latter alluded to patients admitted "upon a court order arising out of a criminal action” while the former refers to patients admitted "pursuant to order of a criminal court”. That legislators ascribed no particular importance to this change in language is apparent from a memoran *357 dum accompanying Assembly Bill No. 8994 and Senate Bill No. 7045 introduced during the 1976 Legislature (but not enacted) whose aim was to amend subdivision (c) of section 43.03 "to remove the responsibility of the county for the costs of maintenance of defendants committed to mental hospitals pursuant to Criminal Procedure Law § 330.20”.
It is also noteworthy the Legislature explicitly dictated, in CPL 330.20 (subd 3), that a hearing held to determine whether a person already committed pursuant to CPL 330.20 (subd 1) could safely be discharged "shall be deemed a civil proceeding”, but included no such provision when it dealt with commitments, under CPL 330.20 (subd 1), upon the rendition of the verdict. Clearly, in view of the proximity of these two subsections, if the Legislature had intended the commitment itself to "be deemed a civil proceeding” it would have so specified.
Finally, if defendants’ reading of subdivision (c) of section 43.03 of the Mental Hygiene Law is adopted, the only occasion a county would be liable thereunder would be when a criminal court issued an "order of examination” pursuant to CPL article 730 directing a defendant be examined for the purpose of determining whether he lacked capacity to understand the proceedings or to assist in his own defense. But subdivision (c) of section 43.03 is not so limited for it encompasses services furnished patients "while being held pursuant to order of a criminal court or for examination pursuant to an order of the family court”. (Italics added.)
The unmistakable implication to be drawn from this language is that the Legislature determined to restrict a county’s liability with respect to Family Court orders to those instances when the patient is held for examination. However, a county’s liability springing from criminal court orders has not been so narrowly circumscribed. Had the Legislature intended to restrict a county’s liability solely to those services rendered while a defendant was being held "for examination” pursuant to an order of a criminal court as it did with Family Court orders it could and would have expressly done so.
Since the County Court’s status, when it issued the commitment order under CPL 330.20 (subd 1), was that of a criminal court it necessarily follows plaintiff is entitled to summary judgment for the amount sought with appropriate interest thereon, together with timely payment for services rendered in the interim, and which may be furnished in the future, for *358 the care and treatment of this patient. However as plaintiff has not met the prerequisites for a class action set out in CPLR 901 that aspect of its motion is denied.