Meyer, J.
(concurring). I concur in reversal and reinstatement of the order of Mr. Justice Yoswein directing the release of Torsney on condition. I agree that committing a person who has been acquitted under CPL 330.20 to the custody of the Commissioner of Mental Hygiene, without a prior hearing, is constitutionally permissible, but disagree that, except in the most formal sense, this results, as the plurality opinion suggests by its quotation from People ex rel. Henig v Commissioner of Mental Health (43 NY2d 334), from the fact that the individual "has successfully asserted an insanity defense”. The quoted words imply, and both the Henig opinion (43 NY2d, supra, at p 338) and that in People v Lally (19 NY2d 27, 33) flatly state, that what sustains the commitment is the individual’s success in convincing the trier of fact that he was insane when the crime was committed. To the contrary, as the plurality opinion recognizes (at p 674), but the dissenting opinion (at p 689) elides, the burden of proving a defendant’s sanity being on the State, acquittal by reason of mental disease or defect means nothing more than that the People failed to prove sanity, and therefore culpabil *685 ity, beyond a reasonable doubt. Though there has, therefore, been no determination of "mental illness” sufficient to warrant commitment under the Mental Hygiene Law, commitment is, nevertheless, constitutionally permissible for "examination and report as to * * * sanity” (People v Lally, supra, at p 33; plurality opn, at p 674) in light of the prompt hearing required following such a commitment (People ex rel. Henig v Commissioner of Mental Health, supra, at p 340), of the need to protect society from the violent antisocial behavior which by its verdict of "not guilty by reason of mental disease or defect” the jury has necessarily found the individual to have committed (id., at p 338; see, also, Fhagen v Miller, 29 NY2d 348; and Matter of Coates, 9 NY2d 242), and of the individual’s act in entering such a plea.
CPL 330.20 does not, however, deal with how long an individual committed under its provisions may be held or what the relationship of his commitment to mental illness is. It authorizes a hearing at the instance of the individual (subd 5) or of the Commissioner of Mental Hygiene (subd 2), and conditions discharge (or release upon condition) only upon whether that may be done "without danger to himself or to others” (subds 2, 3; cf. subd 4). In my view, examination pursuant to temporary detention under CPL 330.20 must be followed either by release pursuant to hearing under CPL 330.20, if that be the commissioner’s and the court’s conclusion, or by a commitment hearing under the provisions of the Mental Hygiene Law, if the conclusion be that the detainee suffers from "mental illness”[1] warranting warranting commitment under the Mental Hygiene Law, or both suffers from such an illness and is dangerous to himself or others. The point is, as the plurality decision concedes (at p 675), that dangerousness alone is an insufficient basis for involuntary commitment, and that while the commissioner or the detainee *686 may show the detainee’s entitlement to release by showing his lack of dangerousness, the absence of such proof does not authorize continuation of involuntary commitment[2] beyond a reasonable time for purpose of examination and report (cf. O’Connor v Donaldson, 422 US 563, 574-575; Jackson v Indiana, 406 US 715, 738; McNeil v Director, Patuxent Inst., 407 US 245, 249-250).
In summary, my view is that the only criterion for a CPL 330.20 release hearing is danger to self or to others, and that if the State intends to continue a CPL 330.20 commitment beyond the time required for examination and report it must begin a Mental Hygiene Law proceeding and make the showing required for any other civil commitment under that law. Absent such a showing the detainee will be entitled to release, on constitutional grounds via habeas corpus, even though he does not prove in a CPL 330.20 hearing by a preponderance of evidence that he is not dangerous (cf. Jackson v Indiana, 406 US 715, 736, 738, supra).

. Under the circumstances of this case I need neither accept nor reject as "mental illness” the plurality’s reference (at p 684) to "personality disorder” or the dissent’s reliance (at p 690) on "symptomatology”. The subject would appear, however, to be one for legislative study in view of the difference between the broad definition of “mental illness” in subdivision 20 of section 1.03 of the Mental Hygiene Law and section 28 of the General Construction Law and the more limited term "mental disease or defect” appearing in section 30.05 of the Penal Law. The importance, both to individual liberty and to the protection of society against violence, of clear legal definition is emphasized by the inability of the medical profession to reach a clear consensus on what "mental illness” includes. For a comprehensive study of possible legislative reform see Morris, The Insanity Defense: A Blueprint For Legislative Reform.

. Whether it authorizes imposition of conditions as provided in the order under review is not before us, since Torsney’s appeal on this point goes to the construction of the statute rather than to its constitutionality.