OPINION OF THE COURT
Harry H. Kutner, J.
In these proceedings, petitioners Kenneth Augustowski, William Harry Harrison and Cleve Isaac seek to obtain their release from custody of the Commissioner of Mental Health because of the undisputed failure of the commissioner to timely apply for a retention order pursuant to CPL 330.20 (subd 9).
Following independent jury trials of felony indictments, each petitioner was found not responsible by reason of mental disease or defect. Pursuant to CPL 330.20 (subds 2, 6), psychiatric examinations and hearings were conducted to determine each petitioner’s mental state and petitioners were ordered committed to the custody of the Commissioner of Mental Health.
*278 The retention orders in the Augustowski and Isaac cases expired on January 17, 1983 and in the Harrison case on September 18, 1982. In each instance, the commissioner failed to timely file an application for retention or release of the petitioners or to give the required notice under CPL 330.20 (subd 9). Subsequent to the filing of petitioners’ writs of habeas corpus the commissioner filed petitions for retention of each of the petitioners.
The issue presented in these proceedings is whether a failure by the commissioner to adhere to the time requirements for applications for retention orders pursuant to CPL 330.20 (subd 9) is a jurisdictional defect which requires the release from custody of the petitioners.
Petitioners do not contend or allege that they are mentally fit to be released. They argue that the court’s jurisdiction over them ceased with the termination of the last retention order.
The commissioner contends that his failure to timely apply for a second retention order is merely a procedural irregularity, that petitioners may be discharged only by court order, and that the proper remedy for petitioners was a proceeding under article 78 to compel the commissioner to apply for either a retention or a release order.
The only course open to the petitioners to test the validity of their detention was a writ of habeas corpus. Proceeding under article 78 to compel the filing of a petition by the commissioner would not have raised the question intended to be raised and would have conceded the commissioner’s position that his failure to timely file was no more than a procedural irregularity, thus insulating him from the duty imposed by the Legislature.
A reading of the statute discloses that patients such as petitioners may be released only by court order (CPL 330.20). While it mandates the filing of a petition by the commissioner to either release or retain a patient at the termination of a current order of retention, it is silent on the procedure to be followed upon the commissioner’s failure to file or the consequences of a failure on the commis *279 sioner’s part to file such a petition. In such cases, it becomes necessary to determine legislative intent by looking to the legislative history of the statute involved.
In 1980, CPL article 330 was amended after the Law Revision Commission completed a review of the defense of insanity as requested by the Governor. The commission recommended that the insanity defense be retained, but that postverdict procedures concerning the institutionalization and treatment of persons charged with serious crimes but found not responsible by reason of mental disease or defect be modified to insure public safety and at the same time safeguard the rights of the mentally disabled offender. Pursuant to the commission’s recommendations, a bill incorporating such recommendations was enacted and signed into law by the Governor. While concerned for the safety of the public, the authors of the legislation provided ample protection for the constitutional rights of the defendant. The bill protects the public safety by providing in CPL 330.20 (subd 2) that upon entry of a verdict of not responsible by reason of mental disease or defect, or upon acceptance of such a plea, the court must immediately order a psychiatric examination of the defendant by the Commissioner of Mental Health, who must report his findings to the court. Within 10 days of receipt of such reports, the court must conduct a hearing to determine the defendant’s mental condition.
An order must be granted committing the defendant to the custody of the Commissioner of Mental Health for secure placement if the court finds that the defendant suffers from a dangerous mental disorder or for placement under civil commitment pursuant to articles 9 and 15 of the Mental Hygiene Law if the defendant is found not to be suffering from a dangerous mental disorder but is found to be mentally ill. Even if the defendant is not found to be suffering from a dangerous mental disorder or from mental illness, the court may include conditions in its order discharging the defendant, which include ordering the defendant to comply with the prescribed treatment plan or with any other condition which the court determines to be reasonably necessary or appropriate (CPL 330.20, subds 6, *280 7). The burden of proof is on the People to prove that the defendant is suffering from a dangerous mental disorder or is mentally ill.
Thus, in providing safeguards in the form of examinations and hearings, the Legislature has demonstrated its intention to protect the rights of the defendant. While so doing, however, it also clearly showed concern for the protection of the public safety by removing discretion from the court as to the disposition to be made upon a finding of dangerous mental disorder or mental illness. Having made such provisions, the Legislature again directed its attention to the defendant’s rights by providing for limitations in the terms of the commitment and retention orders, and by mandating certain actions by the Commissioner of Mental Health, who under CPL 330.20 (subd 8) must, at least 30 days prior to the expiration of any order, apply to the court for an order of retention or release of the defendant. If it was the legislative intent that the defendant be released from custody solely upon the commissioner’s determination or upon his failure to timely apply for a retention order, no purpose would be served by the requirement that the commissioner also apply for a release order. It was the intention of the Legislature, as evident from its provisions, that the determination to release or retain the defendant henceforth should rest solely in the sound discretion of the court.
Such a provision serves only one purpose, the protection of society, by providing safeguards against the untimely release of a defendant. This view is further supported by other provisions of the statute. Not only is the commissioner required to apply for either the retention or release of the defendant, who must be given the opportunity to contest an application for retention or support an application for release; the commissioner must also give written notice of the application to the District Attorney, who may contest an application for release or support an application for retention, the defendant, counsel for defendant aiid the Mental Health Information Service (CPL 330.20, subd 9).
There are few prior decisions to aid the court in determining the question of rights of the defendant vis-a-vis the public safety. The Court of Appeals has held that *281 persons such as these petitioners are members of a unique and exceptional class which the State may treat differently than other individuals whose mental illness has not resulted in violations of the Penal Law. The State may presume that the causative mental illness continues beyond the date of acquittal, and may require a determination of the defendant’s present need for treatment and confinement (Matter of Torsney [State Comr. of Mental Health — Gold], 47 NY2d 667).
There are reasonable grounds for giving special treatment to a man who has been held not guilty because insane on his own plea to that effect (People v Lally, 19 NY2d 27). The Legislatures of this and other States have felt that such a jury verdict creates a situation where public safety as well as the defendant’s safety require that he be committed and examined before returning to society (People v Lally, supra). The public acquires a special interest in the liberty status of persons in this exceptional class who have already endangered the public safety as a result of their mental condition (Matter of Miller, 46 AD2d 999).
The court does not condone the commissioner’s errors. The commissioner has been derelict in a duty which the statute clearly mandates. However, the method of punishing that dereliction must be left to the Legislature. Releasing a defendant who is potentially dangerous would be punishing the public for the dereliction of the commissioner. Refusal to adopt petitioners’ position does not leave the petitioners without a remedy. They may petition the court for rehearing and review within 30 days after the making of such order (Mental Hygiene Law, §§9.35, 15.35), alleging that they have recovered. They may also seek an order to compel the commissioner to petition the court, as required by CPL 330.20 (subds 8, 9).
The court holds, therefore, that the commissioner’s failure to timely apply for a second retention order does not mandate the release of petitioners.
The habeas corpus petitions are denied, and petitioners shall be retained in the custody of the commissioner pending a hearing to determine the commissioner’s application *282 for a second retention order, which shall be held at the earliest date convenient to the court.