Keating, J.
The primary issue presented by these three appeals is whether the defendants, who were sentenced to one day to life for various sex offenses, were entitled to a hearing prior to the imposition of sentence. The resolution of this issue depends in turn upon the applicability of the recent Supreme Court decision in Specht v. Patterson (386 U. S. 605 [1967]) in which the court held that the sentencing procedure outlined in the statutes of the State of Colorado was constitutionally defective in failing to provide a defendant with an opportunity to be heard and be confronted with evidence prior to the imposition of an indeterminate sentence of one day to life.
*593 The Colorado statutes, like the Hew York statutes, authorize the imposition of the one-day-to-life sentence as an alternative to the ordinary sentence prescribed for various sex offenses. The Colorado statute authorizes the court to impose the sentence after guilt of an underlying sex crime is established if the court “is of the opinion that [the defendant] * * *, if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill” (Col. Rev. Stat. Ann., § 39-19-1). Prior to the imposition of the sentence the statute requires that the defendant be given a complete psychiatric examination and that a complete written report be submitted to the sentencing Judge, containing all facts and findings, together with recommendations with regard to whether the defendant is treatable under the provisions of the sex offender statute or whether he should be civilly committed. The court is not, however, bound by the findings in the psychiatric report and can base its conclusion on the entire record (Trueblood v. Tinsley, 148 Col. 503, cert. den. 370 U. S. 929 [1962]).
The basis of the Supreme Court’s decision holding that the Fourteenth Amendment requires a hearing was its conclusion that, under the Colorado procedure, the mere commission of the underlying sex crime was by itself insufficient to justify the one-day-to-life sentence but rather an additional finding was mandated — namely, that the defendant constitutes a threat of bodily harm to the public, or is an habitual offender or mentally ill. The defendant, the Supreme Court held, was entitled to a hearing on this “new finding of fact that was not an ingredient of the offense charged ”.
The applicability of Specht v. Patterson {supra) to the New York sex offender statute then is dependent on whether the sentencing Judge has absolute discretion to sentence a sex offender to the alternative one-day-to-life sentence or whether, like the procedure under the Colorado statute, the Judge’s discretion to sentence in such a manner is limited to those cases in which the record supports a new finding of fact “ that was not an ingredient of the offense charged ”.
A literal reading of the Hew York statutory scheme might lend support to the argument advanced by the People and accepted by the Appellate Division that the sentencing court *594 has “complete discretion ” to sentence for one day to life. An examination of the statutory purpose as well as the weight of judicial authority indicate that the discretion of the sentencing Judge to mete out a one-day-to-life sentence is limited to those cases in which the record indicates some basis for a finding that the defendant is a danger to society or is capable of being benefited by the confinement envisaged under the statutory scheme. Absent such a basis, the sentence cannot stand (People v. Jackson, 20 A D 2d 170, 174 [1963], 21 A D 2d 843 [3d Dept., 1964]; People ex rel. Piatt v. La Vallee, 26 A D 2d 904 [4th Dept., 1966]; People ex rel. Chumley v. Mancusi, 26 A D 2d 905 [4th Dept., 1966]).
The earliest and perhaps the leading case in this area is People v. Jackson (20 A D 2d 170, supra). In that case the defendant was convicted of a specified sex crime and received an indeterminate one-day-to-life sentence. After serving 11 years the defendant succeeded in having the sentence vacated. Upon remand the defendant received a one-day-to-life sentence and it was the imposition of this sentence which the defendant appealed. The record indicated that, during the 11 years of his confinement, the defendant had not received any psychiatric care and there was nothing in the record to justify a finding that the defendant was a danger to society if released.
Judge Bergan, then Presiding Justice of the Appellate Division (Third Department), first proceeded to examine the history and purpose of the statute. He noted that the statutory scheme dealing with sex offenders was based upon a comprehensive study envisioning a flexible form of sentencing which would provide the prisoner with rehabilitative treatment and permit the Parole Board to release him when it believed that he was no longer a danger to society. As Judge Bergan wrote in People v. Jackson (20 A D 2d 170, 172-173, supra): “It was envisioned, therefore, as the title of the statute itself suggests, that treatment was an integral and essential part of a program to be followed in the penal system. Where the offender could be treated with some reasonable chance of improvement, it was contemplated that under a sentence so flexible that it might last for his natural life, he would be able to receive adequate treatment and would be discharged if improved to the extent it would be safe to release him.
*595 “As a necessary concomitant of this public policy, of course, it was realized that some offenders would not yield to any treatment and that when such cases were clearly identified and professionally evaluated, it would be expected that the dangerous offenders he held until the situation changed. Sometimes this would be for their whole lives. The reason for this was not because life imprisonment was believed a just treatment, but because no other reasonably safe alternative could be found.
‘‘ It was not contemplated- that an offender be held for many years without treatment and without some sound professional basis for believing that during all of this period it would be unsafe to release him.” (See, also, Report On Study Of 102 Sex Offenders At Sing Sing Prison, Public Papers of Governor Thomas E. Dewey, 1950, p. 162.)
The Appellate Division after ordering a psychiatric report in the Jackson case held that a one-day-to-life sentence would be improper because the report indicated that the defendant would not be benefited by such a sentence and that he was not a danger to society (People v. Jackson, 21 A D 2d 843, supra). The reasoning of the Jackson case has been followed in several subsequent cases. (See, e.g., People ex rel. Kaganovitch v. Wilkins, 23 A D 2d 178 [1965]; People ex rel. Piatt v. La Vallee, supra; People ex rel. Chumley v. Mancusi, supra.)
In addition to these Appellate Division cases, our court has been scrupulous in requiring compliance with section 2189-a of the former Penal Law. That statute provides, as the Colorado statute did, that no person shall receive an indeterminate sentence of one day to life ‘‘ until a psychiatric examination shall have been made of [the person convicted] and a complete written report thereof shall have been submitted to the court ”. In People ex rel. Lawson v. Denno (9 N Y 2d 181 [1961]) we held that such a report must be current and pertinent to the statutory purpose. This means, as the several departments of the Appellate Divisions have held, that the report “ should discuss and analyze the defendant’s sexual problem and whether such condition was of a type which would yield to treatment. The report is inadequate if it does not state the risk to society involved in the defendant’s immediate release, with or without treatment, and defendant’s potential for responding to treatment”. (People v. Kearse, 28 A D 2d 910 [2d Dept., 1967]; *596 see, also, People v. Fleming, 29 A D 2d 722 [3d Dept., 1968]; People v. Jiggetts, 19 A D 2d 837 [2d Dept., 1963]; People v. Jackson, supra.)
While we have, in effect, held that the sentencing Judge is not bound by the findings contained in the psychiatric report, provided that there is other evidence in the record to sustain a finding that the sentence conforms to the purpose of the sex offender statute (People v. Rhodes, 15 N Y 2d 729 [1965]), we have never held, nor to our knowledge has any appellate court in this State held, that a person may receive a one-day-to-life sentence where the record is barren of any evidence to support a conclusion that he is a danger to society or is capable of being benefited by special treatment envisioned under the statutory scheme.
This requirement that, in addition to the proof of the underlying sex crime, there must be an additional finding of fact independent of the question of guilt before the indeterminate sentence can be imposed clearly brings this case within the ambit of the Specht holding and entitles those sentenced under the statute to a hearing. In this conclusion, we note, the People in People v. Leisen and People v. McCraw concur.
Having concluded that a Specht v. Patterson hearing is required, we must determine both the fate of the statute which does not require a hearing as well as the fate of those previously sentenced without a hearing.
The policy of this court has always been to construe statutes in such a manner as to uphold their constitutionality. Indeed, we have just recently read a requirement for a hearing into an analogous statute in order to preserve its constitutionality (see People v. Lally, 19 N Y 2d 27). Such a reading of the statute here (former Penal Law, § 2189-a) would not be inconsistent with the language or the statutory scheme and is clearly warranted.
The retroactive application of the Specht case to those already sentenced cannot seriously be questioned either under the standards that this court or the Supreme Court have set down. As the Supreme Court stated in Stovall v. Denno (388 U. S. 293, 297): “The criteria guiding resolution of the question [of retroactivity] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law *597 enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. ‘ [T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provisions of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved.’ ”
The basis of the Supreme Court’s decision requiring a hearing is that the most basic concepts of justice and fairness require that the defendant be given an opportunity to participate in a fact-finding process which could result in his imprisonment for life as opposed to a relatively shorter sentence which would be warranted if the particular facts were not established. The unfairness, implicit in the procedure under which these men were sentenced, results in a continuing violation of their constitutional rights which can be rectified only by vacating their sentence and giving them a hearing. To this extent the case is distinguishable from those cases in which exclusionary rules designed to deter future police conduct were formulated or in which the changes did not affect the integrity or fairness of the fact-finding process (People v. Kaiser, 21 N Y 2d 86 [1967]; People v. McQueen, 18 N Y 2d 337 [1966]; Johnson v. New Jersey, 384 U. S. 719 [1966]). Moreover, since those sentenced under the statute should he receiving psychiatric care and are required to receive a thorough psychiatric examination once every two years and since only resentencing is necessary, compliance with Specht will not impose the kind of burden or give rise to the type of prejudice which would result if this were the kind of case where adherence to the new rule required a retrial.*
The People argue, however, that, where the defendant had notice that the Judge was considering the imposition of a one-day-to-life sentence, a hearing is not required at the time where none was requested prior to sentence. The rule is, however, that, where a particular change in Federal constitutional law is to he applied retroactively, a State may not through the use of pro *598 cedural device, such as the requirement for an exception, deprive a defendant of the benefit of the change. This is especially so when an exception or in this type of case a request for a hearing would have in all likelihood been rejected (O’Connor v. Ohio, 385 U. S. 92 [1966]; cf. People v. De Renzzio, 19 N Y 2d 45, 54, concurring opn. [1966].)
Turning then to the cases at hand. In People v. Leisen the defendant was not afforded a Specht v. Patterson hearing and the judgment appealed from should be reversed and the defendant remanded for resentencing.
In People v. Bailey and People v. McCraw we need not reach the hearing question — although a reversal would be required on this ground — since in both cases the psychiatric reports did not comply with the standards which have been set down under the provisions of section 2189-a of the former Penal Law.
The psychiatric report in People v. Bailey merely states that the defendant has a sociopathic personality without a favorable prognosis. The report does not contain any discussion of the defendant’s sexual problems or for that matter does not even state that he has such a problem. Nor does the report indicate whether the defendant is likely to engage in any violent sexual misconduct. By no standard could this report be said to be pertinent to the statutory purpose of section 2189-a as outlined earlier. The judgment appealed from should be reversed and the defendant remanded for resentencing.
The psychiatric report in People v. McCraw is likewise defective. The pertinent portion of the report reads as follows: “ It is the opinion of both examining psychiatrists that this man is suffering from a chronic psychopathic personality disturbance with no insight. There is no indication at this time that he has changed his personality makeup or that he is willing to change his personality makeup. He tries to excuse his past acts or tries to deny them without facing his own faults and misdeeds himself, it is highly improbable that he will change his behavior in facing further circumstances. Therefore, from this present examination, it can only be determined that he has not and probably will not benefit from experience. It is also believed that he will not benefit from psychiatric treatment since he has had such in the past and has shown no improvement. In the past he has shown behavior dangerous to others in the community. *599 He has shown an inability to resist the use of alcohol and drugs and has shown that when under the influence of alcohol and drugs he commits acts which must be considered both immoral and illegal. In view of this, it is believed he will require a controlled environment in the future for an indeterminate period.”
The report suffers from the same defects, though not quite as serious, as those in the Bailey case and the judgment appealed from should be reversed and the defendant remanded for resentencing.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
In People v. Bailey. Judgment reversed and case remitted to Supreme Court, Kings County, for resentencing.
In People v. Leisen and People v. McCraw: Judgments reversed and cases remitted to Nassau County Court for resentencing.

 The Department of Correction has advised us that there are only 155 persons presently incarcerated under the sex offender statute.