Michael **FHAGEN**, on behalf of himself and all other persons similarly situated, Plaintiff,

v.

Alan D. **MILLER**, M.D., as Commissioner of Mental Hygiene of the State of New York, and Alexander Thomas, M.D., as Director of the Psychiatric Division, Bellevue Hospital Center, Defendants.

No. 69 Civ. 3218.

United States District Court,
S. D. New York.

April 20, 1970.

4. 46 U.S.C. § 1304(5).

Bruce J. Ennis, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. State of New York, New York City, for defendant Miller; Samuel A. Hirshowitz, First Asst. Atty. Gen., Brenda Soloff, Asst. Atty. Gen., of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendant Thomas; Judith Gordon, Asst. Corp. Counsel, of counsel.

Before KAUFMAN, Circuit Judge, and WEINFELD and PALMIERI, District Judges.

## OPINION

EDWARD WEINFELD, District Judge.

This three-judge court was convened to consider plaintiff's challenge to the constitutionality of section 72 (two-physician admission) and section 78 (emergency admission) of the New York Mental Hygiene Law. The challenged sections, part of a sweeping change in the then-existing Mental Hygiene Law, were enacted after extensive investigation and exhaustive study and research by the members of the legal and medical professions and other public groups. The new law, the product of these studies, sought to achieve a balanced approach to the interests of the individual and the community in the administration, treatment and hospitalization of the mentally ill; it also was keyed to due process requirements and designed to provide a more meaningful judicial review than was available under the prior law.[1] Plaintiff nonetheless contends that the new law fails adequately to protect the due process rights of the allegedly mentally ill.

1. See McKinney's 1964 Sess.Laws of N.Y. p. 1968 (Governor's memorandum approving the bill). See also Special Comm. of the Assoc. of the Bar of the City of N. Y. with the Cornell Law School, Mental Illness and Due Process: Report and Recommendations (1962).

The relevant provisions of the challenged statute are set forth in the district court's opinion granting the motion to convene this court,[2] and need not be repeated here. However, additional matters are to be noted. Prior to the argument before this court, the Commissioner of Mental Hygiene promulgated certain regulations with respect to section 78 to provide additional safeguards for prospective patients.[3] Thus, a person brought to a hospital approved for the admission of section 78 patients shall be "forthwith examined by a staff physician," after which "the patient may be admitted" if "found to be in need of immediate observation, care and treatment." The Mental Health Information Service [4] is to be notified promptly of the admission. Also, the patient is to be notified in writing (1) that he has the right to demand his release at any time and, if not released, the right "to receive a judicial hearing at his request on the question of need for hospitalization"; (2) that the Mental Health Information Service has been told of his admission and is available to him; (3) that he may, at any time, on his own or at the request of anyone on his behalf, contact the Mental Health Information Service and avail himself of its facilities; and (4) that he may communicate once by telephone or "by the next most expeditious method" with any person in the state. If the director is unwilling to meet a demand for release, the demand is to be treated as a request for habeas corpus pursuant to the Mental Hygiene Law, section 426, and the director is to notify both the appropriate court and the Mental Health Information Service of the demand. Moreover, the hearing in no way abrogates the obligation of the hospital to proceed with the filing of a two-physician certificate, as required by the Mental Hygiene Law, section 78(2). No patient is to be retained under section 78 for more than fifteen days.

The defendants urge that this court should not reach the merits, but should permit the state courts, in the first instance, to construe this novel statutory scheme. While they contend that the provisions under attack meet federal constitutional requirements, they argue that in any event they are susceptible of a construction which would modify or eliminate the constitutional exceptions raised by plaintiff without invalidating the entire innovative scheme. Plaintiff, on the other hand, urges us to reach the merits upon a plea that no interpretation of these statutes would upon the facts make them inapplicable to him; further, that he presents solely federal constitutional claims which he has the absolute right to have adjudicated in a federal forum, even though they may also be adjudicable in the state courts. He also contends that the state procedures to test the Act are unduly restrictive, and that as a practical matter the delay which would follow abstention would defeat his claim for relief.

This court is of the view that this is a proper case in which it should abstain while retaining jurisdiction pending the outcome of any state litigation.[5] Sections 72 and 78, which plaintiff seeks to strike down in their entirety, have yet to be construed by the New York Court of Appeals, a court whose policy "has always been to construe statutes in such a manner as to uphold their constitutionality." [6] That court "more

2. 306 F.Supp. 634 (S.D.N.Y.1969).

3. N.Y.Codes, Rules & Regs., tit. 14, §§ 62.1, 62.2.

4. *See* N.Y.Mental Hygiene Law § 88 (McKinney Supp.1969). The members of the Service are appointed by the respective Presiding Justices of the Appellate Divisions and function under the Appellate Division of each Department. *Id.*

5. *See* Zwickler v. Koota, 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) ; Government & Civic Employees Organizing Comm. v. Windsor, 353 U.S. 364, 366, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957) (per curiam).

6. People v. Bailey, 21 N.Y.2d 588, 596, 289 N.Y.S.2d 943, 948, 237 N.E.2d 205, 209 (1968).

than once read into a statute a requirement for the protection of a mentally ill person in order to save it from being stricken as unconstitutional." [7]

There are a number of areas in which state court interpretation could eliminate entirely constitutional objections, or in any event substantially alter the shape of the litigation here.[8] Without in any respect seeking to suggest or to limit the possible interpretations open to the state court, there appear to this court at least two areas in which clarification could be of critical, if not decisive, impact. First, as to admission standards under section 78(1). That section authorizes admission of an individual "alleged to be in need of immediate observation, care or treatment for mental illness." The term "mental illness" is substantially defined under section 2(8), which defines a "mentally ill person" as "any person afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment." The standards governing admission under section 78(1), as read in conjunction with section 2(8), are, upon the face of the statute, subject to various interpretations which may restrict the class of persons to whom the emergency sec-

tion applies. They may reasonably, although not necessarily, be construed as requiring the patient to be dangerous to himself or others to the extent that immediate care and treatment are necessary for the protection of the patient or the community. If the statute were so construed, plaintiff concedes his objection would disappear.[9] And if the New York courts should expand the standard beyond the common law definition of dangerousness [10] to cover non-violently dangerous [11] or even harmless prospective patients—it would then be appropriate to consider whether such a standard offends due process requirements. Until the New York courts rule, action by this court would be premature and ill-considered.[12]

Second, under the new regulation (the validity of which is certainly a question for the state courts), a habeas corpus review is to be instituted automatically upon a patient's objection to his continued retention. Plaintiff charges that this remedy is inadequate upon two grounds: (1) that the burden of proof in such a proceeding is upon the patient; and (2) the inquiry under the habeas corpus statute is restricted to the fact of mental illness at the time of the hearing, rather than at the time of initial con-

7. *In re* Buttonow, 23 N.Y.2d 385, 393, 297 N.Y.S.2d 97, 103, 244 N.E.2d 677, 681 (1968). *See also* People v. Lally, 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966).

8. *See* Harrison v. N. A. A. C. P., 360 U.S. 167, 177–178, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

9. Plaintiff does, however, argue that such a construction is improbable and contrary to the legislative history of the Act. He points to the change from the previous law, *see* Ch. 395, § 13, [1933] Laws of N.Y. 934, *as amended*, Ch. 504, § 7, 2 [1961] Laws of N.Y. 1692–93 (repealed 1964) (former § 75), and to the dangerousness standard explicitly enacted in another section of the new Act. *See* N.Y.Mental Hygiene Law § 76(1)(a) (McKinney Supp.1969). The short answer is that, as the statute on its face is susceptible of a number of constructions, the choice among them is in the first instance for the state courts. *See*

Railroad Comm'n. v. Pullman Co., 312 U.S. 496, 499–500, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

10. *See, e. g., Ex parte* Romero, 51 N.M. 201, 181 P.2d 811 (1947); Warner v. State, 297 N.Y. 395, 401–402, 79 N.E.2d 459 (1948); *cf.* People *ex rel.* Ordway v. St. Saviour's Sanitarium, 34 App.Div. 363, 56 N.Y.S. 431 (1898).

11. The standard of "dangerousness" is itself subject to a range of constructions, which may or may not have reference to physical violence. *Cf. e. g.,* Cal.Welfare & Institutions Code §§ 5150–56 (West Supp.1969) ("a danger to others, or to himself, or gravely disabled as a result of mental disorder"). *See also id.* §§ 5200–13.

12. *Cf.* Government & Civic Employees Organizing Comm. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957); Railroad Comm'n. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (Frankfurter, J.).

finement. But both objections assume a construction of state law which to date has not been made. The burden of proof is not specified by the state statute,[13] nor is there any binding judicial decision in the state in regard to an emergency civil commitment in the absence of prior judicial review.[14] Accordingly, the state is free to allocate the burden of proof as it may decide.[15] As to the second objection, while it is true that section 426 (the habeas corpus provision) states that upon the return of the writ "the fact of * * * mental illness * * * shall be inquired into and determined," it also requires consideration of the patient's history, medical and otherwise. Nothing in the foregoing provision forecloses the state court from construing it so as to authorize a habeas corpus court also to inquire into and determine the validity of the patient's initial detention or his mental condition at that time,[16] assuming that such an inquiry is constitutionally required. The state should be permitted to consider these and any other as yet undetermined substantive and procedural issues.[17]

The result here reached is not only justified but required by applicable law. Under *Government & Civic Employees Organizing Committee v. Windsor,*[18] even if petitioner asserts solely federal constitutional claims, which ultimately are to be resolved by the federal courts, if a state statute is reasonably susceptible of a construction which avoids or fundamentally alters the federal issues, he will be required to repair to the state court for its construction against the background of the claimed federal constitutional issues.[19] That principle, insofar as it pertains to this case, has not been altered by *Zwickler v. Koota.*[20] *Zwickler*, in which a statute was attacked as "overbroad" with the resultant "chilling effect" on the exercise of First Amendment rights, held that abstention could not be employed merely to permit the state courts in the first instance to vindicate federal rights. Rather, abstention would be sanctioned only

---

13. *See* N.Y.Mental Hygiene Law § 426 (McKinney Supp.1969). *See also* N.Y. C.P.L.R. §§ 7001–10 (McKinney 1963).

14. In the absence of a prior judicial proceeding, respondent could not benefit from the "presumption of regularity of official proceedings," People *ex rel.* Williams v. Murphy, 6 N.Y.2d 234, 236, 189 N.Y.S.2d 182, 184, 160 N.E.2d 480, 481 (1959), which normally conditions allocation of the burden of proof.

15. *See* Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642, 652–653 (1968).

16. *Cf.* Application of Gurland, 286 App. Div. 704, 146 N.Y.S.2d 830, 833 (1955).

17. Plaintiff's further objection that there is no adequate state procedure with which to pursue his claims in the state courts is without merit. Whatever restrictions New York may place on the use of class actions, plaintiff realistically does not need to pursue his action as a class action in order to obtain a state court construction of these statutes. Declaratory relief, pursuant to N.Y.C.P. L.R. § 3001 (McKinney 1963), is available in New York to test the construction or validity of statutes or administrative action. *See, e.g.,* New York Foreign Trade Zone Operators, Inc. v. State Liquor Authority, 285 N.Y. 272, 34 N.E. 2d 316 (1941); Kirn v. Noyes, 262 App. Div. 581, 31 N.Y.S.2d 90 (1941); Martin v. State Liquor Authority, 43 Misc.2d 682, 252 N.Y.S.2d 365 (Spec.T.1964), *aff'd mem.*, 15 N.Y.2d 707, 256 N.Y.S.2d 336, 204 N.E.2d 496 (1965). Though New York may consider declaratory relief to be an "extraordinary remedy," Gaynor v. Rockefeller, 15 N.Y.2d 120, 132, 256 N.Y.S.2d 584, 204 N.E.2d 627 (1965), it can not be presumed that relief would be denied in a proper case. Nor does any necessary delay occasioned by abstention justify premature adjudication of plaintiff's claims on the merits. *See* Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

18. 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957) (per curiam).

19. *See* England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964); Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

20. 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

under "special circumstances." But one such "special circumstance," lacking in *Zwickler* [21] and present here, was that the statute was "of an uncertain nature, and * * * obviously susceptible of a limiting construction" [22] which could "avoid or modify the constitutional question." [23] To the extent that *Zwickler* may be read as imposing further limitations on the application of the abstention doctrine, it must be construed in light of the recent case of *Reetz v. Bozanich*,[24] in which the Court reversed the district court's decision not to abstain, although the construction of the challenged statute was not in question. The federal constitutional question could have been avoided, however, if the statute were struck down on the basis of an as yet unconstrued state constitutional provision. The Court also observed: [25]

"In *Zwickler*, a state statute was attacked on the ground that on its face it was repugnant to the First Amendment; and it was conceded that state court construction could not render unnecessary a decision of the First Amendment question. 389 U.S., at 250. A state court decision here, however, could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship." [25]

In the present case, state court construction could well eliminate or at least present in a radically different posture the federal constitutional questions presented. In sum: [26]

"[T]hese enactments should be exposed to state construction or limiting interpretation before the federal courts are asked to decide upon their constitutionality, so that federal judgment will be based on something that is a complete product of the State, the enactment as phrased by its legislature and as construed by its highest court. * * * And of course we shall not assume that the [state] courts will not do their full duty in judging these statutes in light of state and federal constitutional requirements."

Abstention, which is "aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system," [27] is particularly appropriate here where an attack is made upon what purports to be a humane and enlightened legislative undertaking.

This court retains jurisdiction, but withholds consideration of the constitutional issue presented, pending the outcome of litigation in the state courts.

---

21. "But we have here no question of a construction of § 781–b that would 'avoid or modify the constitutional question.' * * * Appellee does not contest appellant's suggestion that § 781–b is both clear and precise; indeed, appellee concedes that state court construction cannot narrow its allegedly indiscriminate cast and render unnecessary a decision of appellant's constitutional challenge." 389 U.S. at 249–250, 88 S.Ct. at 396.

22. 389 U.S. at 251 n.14, 88 S.Ct. at 397.

23. *Id.* at 249, 88 S.Ct. at 396.

24. 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

25. 397 U.S. at 86–87, 90 S.Ct. at 790.

26. Harrison v. N. A. A. C. P., 360 U.S. 167, 178, 79 S.Ct. 1025, 3 L.Ed. 1152 (1959).

27. *Id.* at 176, 79 S.Ct. at 1030.