**Marie SNEAD, Plaintiff,**

v.

**DEPARTMENT OF SOCIAL SERVICES OF THE CITY OF NEW YORK, a governmental agency, et al., Defendants.**

**No. 72 Civ. 4536.**

United States District Court,
S. D. New York.

March 12, 1973.

Covington, Grant, Howard, Hagood & Holland, New York City (George Donald Covington, New York City, of counsel); Thomas Hoffman, New York City, Nathaniel R. Jones, James I. Meyerson, N. A.A.C.P., New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. State of New York, New York City, Samuel A. Hirshowitz, First Asst. Atty. Gen. (Lillian Z. Cohen, Asst. Atty. Gen., of counsel), for State defendants.

Norman Redlich, Corp. Counsel, New York City (Leonard Bernikow, Kew Gardens, A. Michael Weber, New York City, of counsel), for City defendants.

## OPINION

Before MULLIGAN, Circuit Judge, and WEINFELD and BRYAN, District Judges.

EDWARD WEINFELD, District Judge.

This three-judge court was convened to consider plaintiff's challenge to the constitutionality of section 72 of the

New York Civil Service Law,[1] which governs leaves of absence for mentally unfit civil service employees. Plaintiff seeks a declaratory judgment of unconstitutionality, an injunction prohibiting defendants from taking any action thereunder and an order directing her reinstatement with back pay for the period of her involuntary leave of absence. The suit is brought under 42 U.S.C., section 1983, with jurisdiction predicated upon 28 U.S.C., sections 1331, 1343(3) and 1343(4).

Plaintiff is a social worker employed since 1965 in permanent civil service status by the Department of Social Services of the City of New York. The facts surrounding the imposition of the involuntary leave of absence and the relevant provisions of the challenged statute are set forth in the district court's opinion convening this court and need only be briefly summarized here.[2] Section 72(1) provides that when, in the judgment of an appointing authority, an employee is not mentally fit to perform his duties, it may require the employee to submit to a medical examination by a medical officer selected by the state or municipal civil service authority having jurisdiction. If the examining medical officer certifies that the employee is not mentally fit to perform his duties, the appointing authority may place the employee on leave of absence without pay, which may continue up to one year.

Sections 72(2) and 72(3) provide, respectively, for a second examination at the request of the employee after the imposition of the leave of absence[3] and an appeal to the state or municipal civil service commission having jurisdiction. Plaintiff's appointing officer invoked section 72 by ordering her to appear for a medical examination on May 8, 1972.[4] The examining psychiatrist concluded that plaintiff was unfit to perform the duties of her employment and recommended that she be considered for medical leave of absence. Her appointing officer accepted this recommendation and on May 10 placed her on a one year leave of absence.

The thrust of plaintiff's challenge to section 72 is that it authorizes civil service authorities to place employees in permanent civil service status on involuntary leaves of absence of up to one year, upon certification by a medical officer that they are mentally unfit to perform their duties without providing an adversary hearing prior to the effectuation of the enforced leave.[5] She contends that the leave of absence deprived her of a constitutionally protected right to liberty and property which may not, consistent with the due process clause of the Fourteenth Amendment, be infringed without a prior due process hearing.[6] Defendants respond that plaintiff was not deprived of any constitutionally protected interest and that

1. N.Y.Civ.Serv. Law § 72 (McKinney's Consol. Laws c. 7 Supp.1972).

2. 351 F.Supp. 1360 (S.D.N.Y.1972).

3. Pursuant to § 72(2), an employee placed on sick leave may, prior to the expiration of the year, apply to the appropriate civil service authority for an additional medical examination, and if found mentally fit to perform his duties, will be reinstated.

4. His action was predicated upon memoranda received from plaintiff's supervisor which complained, among other matters, of plaintiff's charges of bias and hostility toward her by her co-workers and superiors.

5. Plaintiff also alleges that § 72 was applied to her in a racially discriminatory

manner and in retaliation for "negative opinions" voiced by her, and that the Department of Social Services failed to comply with the terms of the statute. In light of this court's disposition of the attack against § 72 on its face, these claims need not be considered. *See* note 32 *infra*.

6. In addition, plaintiff contends that § 72 violates the equal protection clause because it treats allegedly mentally unfit civil service employees differently than civil service employees charged with misconduct or debilitating physical infirmities pursuant to § 75. Our disposition of the due process challenge makes it unnecessary to reach this question.

even if she were, she was afforded all the process which is constitutionally required. They also raise procedural objections which, they contend, make it inappropriate for this court to reach the merits of the controversy at this time. Each of these questions must be examined in turn.

## EXHAUSTION

■ Defendants urge that plaintiff should be required to exhaust the administrative remedy contained in section 72(3), which provides for an appeal to the state or municipal civil service commission having jurisdiction from the initial finding of mental unfitness or following a refusal to reinstate after a second medical examination. In a series of decisions over the last decade, however, the Supreme Court has held that exhaustion of administrative remedies is not required in cases brought under the Civil Rights Act.[7] It is true that in Eisen v. Eastman,[8] decided before Wilwording v. Swenson,[9] the Supreme Court's most recent pronouncement on the subject, a panel of our court of appeals read the prior cases as only eliminating the requirement of exhaustion of state administrative remedies where they are inadequate or resort to them would probably be futile. It is unnecessary to consider the vitality of *Eisen* in light of *Wilwording*, however, because the *Eisen* court emphasized the Supreme Court's statement in King v. Smith that a Civil Rights Act plaintiff "is not required to exhaust administrative remedies, where the constitutional challenge is sufficient-

ly substantial . . . to require the convening of a three-judge court."[10] Indeed, in the present case there would seem to be little point in compelling plaintiff to exhaust the very procedures, including the appellate review, which she contends are constitutionally inadequate.

## ABSTENTION

■ Entirely apart from their contentions concerning exhaustion, defendants argue that this court should abstain from a decision on the merits in order to give the the state courts an opportunity to construe section 72 in the context of plaintiff's constitutional challenge. It is well established that where the meaning of a statute is fairly open to question and it is reasonably susceptible of a construction which would avoid the need for federal constitutional adjudication or at least fundamentally alter the constitutional issues presented, the state courts should be given an opportunity to pass upon it.[11] Considerations of federalism require "that federal judgment . . . be based on something that is a complete product of the State, the enactment as phrased by its legislature and as construed by its highest court."[12]

The Supreme Court, however, has repeatedly emphasized that abstention should not be ordered merely to give state courts first opportunity to decide constitutional issues: "If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially

7. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

8. 421 F.2d 560, 567–569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970).

9. 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

10. 392 U.S. at 312 n. 4, 88 S.Ct. at 2131, 421 F.2d at 569.

11. *See* Reetz v. Bozanich, 397 U.S. 82, 85–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Zwickler v. Koota, 389 U.S. 241, 248–249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harrison v. N.A.A.C.P., 360 U.S. 167, 176–177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

12. Harrison v. N.A.A.C.P., 360 U.S. 167, 178, 79 S.Ct. 1025, 1031 (1959).

modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." [13] It has also cautioned that the price which must be paid for abstention is frequently piecemeal adjudication in many courts, which delays ultimate decision on the merits for an undue length of time.[14] With these principles to guide us, we consider the defendants' plea that this court abstain from deciding the constitutional issue.

Defendants suggest that the state courts can construe section 72 in a manner which would eliminate or at least significantly modify plaintiff's constitutional challenge. They rely upon instances in which the New York Court of Appeals has, in the face of legislative silence, read hearing provisions into statutes to enable them to survive constitutional scrutiny.[15] In particular, they emphasize that that court's policy "has always been to construe statutes in such a manner as to uphold their constitutionality," [16] and that it "more than once read into a statute a requirement for the protection of a mentally ill person in order to save it from being stricken as unconstitutional." [17]

■■ However, the power of courts to breathe constitutional life into an otherwise questionable statute is not without its limitations. The legislative history which accompanies a statute cannot be ignored. The susceptibility of section 72 to a construction consistent with due process must be determined in the light of the statutory context of which it

is a part. Prior to the enactment of section 72 in 1969, a proceeding against an alleged mentally ill employee was brought under section 75, which was of general application to all employees against whom disciplinary or other charges might be brought. That section provides for a hearing with written notice of the charges and the right to representation by counsel and to summon witnesses before the removal or disciplining of permanent civil service employees.[18] The authorities were of the view that the filing of disciplinary charges of incompetency under section 75, with the consequent dismissal of the employee on that basis after the hearing, was not an appropriate way to handle cases of mental incompetency, which presented a variety of problems.[19] Thus, the procedures mandated by section 72 must be viewed as a deliberate decision concerning the most desirable means of handling employees believed to be mentally ill. It is against this background that the feasibility of defendants' various suggestions whereby section 72 could be interpreted to save its constitutionality must be evaluated.

The defendants, to sustain their claim that the statute is susceptible to a constitutionally valid construction, would bifurcate section 72. They suggest that the procedure provided there might be limited to instances where the alleged mental disability of the employee imposes a clear and immediate danger to others, which would not require a prior adversary hearing, an interpretation that might survive any constitutional

13. Harman v. Forssenius, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 1182 (1966); *see also* Zwickler v. Koota, 389 U.S. 241, 248, 251, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

14. *See* Reetz v. Bozanich, 397 U.S. 82, 86, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

15. *See* Matter of Buttonow, 23 N.Y.2d 385, 393, 297 N.Y.S.2d 97, 103, 244 N.E.2d 677, 681 (1968); People v. Bailey, 21

N.Y.2d 588, 596, 289 N.Y.S.2d 943, 948, 237 N.E.2d 205, 209 (1968); *cf.* People v. Lally, 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966).

16. People v. Bailey, 21 N.Y.2d 588, 596, 289 N.Y.S.2d 943, 948 237 N.E.2d 205, 209 (1968).

17. Matter of Buttonow, 23 N.Y.2d 385, 393, 297 N.Y.S.2d 97, 103, 244 N.E.2d 677, 681 (1968).

18. § 75(2).

19. *See* 2 McKinney's 1969 Session Laws of New York 2399.

challenge.[20] The argument proceeds further that in non-emergency instances the adversary hearing provided for by section 75 might be applied. However, this division of section 72 is not justified either by its language or legislative history. The statute was intended to apply to all instances of alleged mental disability, emergency and non-emergency. Moreover, plaintiff contends that were section 75 to be held applicable to non-emergency cases, it, too, would be constitutionally deficient, since subdivision (3) thereof permits, prior to an adversary hearing, suspension without pay for up to thirty days pending the hearing and determination of charges. Finally, even if section 72 were confined to emergency cases where a prior adversary hearing is not constitutionally required, it would still require substantial modification in order to provide a due process hearing subsequent to the effectuation of the compulsory leave of absence. The burden is currently upon the employee to appeal the finding of mental unfitness to the state or municipal civil service commission having jurisdiction, which "may conduct such inquiry as it deems necessary or desirable." [21] More importantly, the determination appealed from may only be reversed and reinstatement ordered if it was "arbitrary or unreasonable." [22]

Defendants' other proposed constructions raise similar difficulties. For example, they urge that the New York courts could read into section 72 the requirement that employees must have an opportunity to challenge an adverse medical diagnosis before being placed on leave of absence. But, as noted earlier, section 72(1) is unambiguous on its face; it intentionally eliminated the due process hearing formally available under section 75 to those charged with mental unfitness. The suggestion that the state courts might rule that section 72 entitles employees to receive the medical reasons for being placed on involuntary leave also fails to provide adequate grounds for abstention. The thrust of plaintiff's constitutional attack, which is directed at the lack of a prior adversary hearing, would remain unaffected by such a construction. In short, defendants have failed to propose and this court is unable to discover a reasonable construction of section 72 which would avoid or fundamentally alter the constitutional questions presented. The various suggestions advanced by defendants as to how the New York courts could interpret section 72 to give it constitutional validity would require them to judicially redraft the statute in disregard of the clearly expressed legislative purpose to treat the mentally ill employee differently from others who face removal or disciplinary proceedings. Under these circumstances we could not abstain without ignoring our duty to decide properly presented federal constitutional questions in the first instance.[23]

## DUE PROCESS

Proceeding to the merits, it is necessary to inquire whether plaintiff was deprived of "liberty" or "property" within the meaning of the due process clause of the Fourteenth Amendment and, if she was, whether the process afforded by section 72 is constitutionally adequate.

▮ Two recent Supreme Court decisions, Board of Regents v. Roth [24] and Perry v. Sindermann,[25] have provided guidelines as to what interests of gov-

---

20. *See* Board of Regents v. Roth, 408 U.S. 564, 570 n.7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

21. § 72(3).

22. *Id.*

23. *See* Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

24. 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

25. 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed. 2d 570 (1972).

ernment employees are constitutionally cognizable.[26] Read together, these cases establish that property interests include contractual, statutory, or de facto rights to continued employment in the absence of "sufficient cause" for dismissal.[27] There is no dispute between the parties that plaintiff has been employed by the Department of Social Services since December 1965 in permanent civil service status and that she has a right to continued employment in the absence of just cause. The conclusion is inescapable that plaintiff has a property right in continued civil service employment. It is also clear that the placing of plaintiff on an involuntary leave of absence affected her constitutionally protected interest in liberty. According to *Roth,* an employee seeking to establish that his loss of employment deprived him of liberty must demonstrate that the governmental authority has made a charge "that might seriously damage his standing and associations in his community" or imposed "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."[28] Although the matter is not entirely free from doubt,[29] it may be that the general public has developed a sufficient understanding of mental illness so that a finding of mental disability does not necessarily injure a person's "standing and associations in his community." Nevertheless, the fact is that a finding of mental illness severely diminishes a person's "freedom to take advantage of other employment opportunities." This is true not because employ-

ers are bigoted or narrow minded, but because they may have doubts as to whether a person found to be mentally ill will function adequately on the job. These doubts will probably be particularly great where the employment sought, as in plaintiff's case, involves extensive contacts with the public. Defendants contend, however, that plaintiff was not deprived of any interest of constitutional dimensions because she was only placed upon a leave of absence and, if she recovers, may one day regain civil service employment as a social worker. "But it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment. . . . The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property."[30]

Since plaintiff was deprived of liberty and property, the ultimate question to be decided is whether the procedures mandated by section 72 comply with the requirements of due process. Plaintiff argues that before the state may impose an involuntary leave of absence upon her of as much as one year on the grounds of mental unfitness, she is entitled to an adversary hearing. She relies upon a series of Supreme Court decisions which have held that where there is no overwhelming necessity requiring immediate action, due process requires a hearing before an individual may be deprived of liberty or property.[31] Defendants contend, however, that due process is satisfied by the medical examination conduct-

---

26. *See* Russell v. Hodges, 470 F.2d 212 (2d Cir., 1972).

27. *See Sindermann,* 408 U.S. at 601, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Roth,* 408 U.S. at 578, 92 S.Ct. 2701, 33 L.Ed.2d 548.

28. 408 U.S. at 573, 92 S.Ct. at 2707.

29. *Cf.* Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Dale v. Hahn, 440 F.2d 633, 636 (2d Cir. 1971); Birnbaum v. Trussel, 371 F.2d 672, 677 (2d Cir. 1966).

30. Fuentes v. Shevin, 407 U.S. 67, 84–85, 86, 92 S.Ct. 1983, 1996–1997, 32 L.Ed.2d 556 (1972).

31. *See* Board of Regents v. Roth, 408 U.S. 564, 569–570, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972); Fuentes v. Shevin, 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

ed by an impartial doctor which section 72 provides.[32]

■ In Goldberg v. Kelly [33] the Supreme Court held that prior to the termination of their benefits welfare recipients must be given timely and adequate notice detailing the reasons for the proposed termination, an effective opportunity to defend by confronting adverse witnesses and by presenting their own evidence and arguments orally before an impartial decision maker and the right to be represented by retained counsel. Although *Goldberg* described these procedural requirements as "those demanded by rudimentary due process," [34] in subsequent procedural due process decisions the Supreme Court has generally refrained from discussing the precise nature of the procedures required. The Court has repeatedly insisted, however, that due process is only satisfied by the kinds of notice and hearing that are likely to establish the validity of the deprivation in question.[35] Thus inquiry must focus upon whether the medical examination provided by section 72 is sufficient to assure that a finding of mental unfitness will be a fair and accurate one.

■ Defendants offer two arguments in support of their position that an examination by a neutral doctor satisfies the requirements of procedural due process. Their first contention is that mental condition is a matter of expert judgment which differs significantly from most factfinding and would not be aided by the procedures thought appropriate to the latter. Such a view, however, rests upon a failure to appreciate the essence of a section 72 proceeding. There can be little doubt that the doctor's and appointing authority's ulti-

mate conclusions as to mental fitness are predicated in part upon their judgments concerning the truth or falsity of the charges which prompted the examination. To this extent, the inquiry is factual in the traditional sense, and there is no reason for believing that a psychiatric examination is an appropriate means of resolving such factual disputes. At the interview the employee is placed in the position of having to explain incidents charged by accusers he is not permitted to confront and described in a file seen by the psychiatrist but unseen by him. He has no opportunity to present witnesses who might rebut his accusers or to retain the assistance of counsel in the preparation or presentation of his case. Unless doctors are deemed to possess an omniscience which our legal system refuses to attribute to the most experienced judges, they cannot be expected to make fair and accurate factual determinations under such circumstances. Even to the extent that the ultimate determination of mental fitness depends upon the judgment of a doctor based exclusively on his observations of the employee at the examination, fairness requires that the employee have an opportunity to challenge the doctor's conclusions and present his own medical evidence. Our jurisprudence does not recognize the opinion of any individual expert as infallible; professional judgments concerning mental fitness are just as likely to differ as the observations of layman regarding simple issues of fact.

The second argument pressed by defendants is that the traditional protections mandated by procedural due process are not required within the context of section 72 because the proceeding in question is of a benevolent rather than of an adversarial or prosecutorial na-

---

32. In view of our disposition of the due process issue, we do not consider the claim that the procedure applied in plaintiff's case was contrary to the legislative mandate, in that the examination was conducted by a doctor designated by the employing department instead of one designated by the appropriate civil service commission as section 72 requires.

33. 397 U.S. 254, 266–271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

34. *Id.* at 267, 90 S.Ct. at 1020.

35. *See* Fuentes v. Shevin, 407 U.S. 67, 97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ; Bell v. Burson, 402 U.S. 535, 539–542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

ture. To the extent that the employee wants to continue working and the employer wants to impose an involuntary leave of absence, however, the two have sharply divergent interests. In addition, it has never been held that procedural due process is only required to protect against the malevolent actions of those in authority. Regardless of the motivations of the civil service employer, the procedural protections guaranteed by the due process clause are necessary to assure the accuracy and fairness of the ultimate decision concerning mental fitness and to give the individual assurance that he has been fairly treated.[36]

Although we hold that defendants must conduct an adversarial hearing before placing civil service employees in permanent status on involuntary leave of absence for mental unfitness in the absence of exceptional circumstances requiring immediate action, we do not prescribe the precise form such hearings must take.[37] It is up to the state to determine which of the many potential formats it deems most appropriate.[38] All that the Constitution requires is that before involuntary leaves of absence are effectuated, which may continue for one year without pay, tenured civil service employees charged with a mental disability be granted a hearing containing the "rudimentary due process"[39] necessary to the accurate determination of the validity of the allegation. This section 72 fails to do.

Accordingly, section 72 of the New York Civil Service Law is declared unconstitutional and defendants are en-

joined from taking any action thereunder. It is also ordered that plaintiff be reinstated with back pay for the period of her involuntary leave of absence.

---

**36.** *See* In re Gault, 387 U.S. 1, 15–27, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

**37.** *Cf.* Fuentes v. Shevin, 407 U.S. 67, 96–97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 542–543, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

**38.** For example, the state might choose to retain the current psychiatric examination and hold an adversary hearing after its completion and introduce it as evidence at that proceeding. No doubt there are other alternatives. It is also appropriate

to note that due process does not require both a prior and a subsequent hearing. Goldberg v. Kelly, 397 U.S. 254, 267 n.14, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). If the state desires to make the prior hearing the sole hearing, however, a greater degree of formality is required. *Cf.* Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Goldberg* at 267, 90 S.Ct. 1011, 25 L.Ed.2d 287.

**39.** Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).