CHARLES W. SHEA, as Executor of Victor J. Whitree, Deceased, Respondent, v CITY OF NEW YORK et al., Appellants.

First Department, October 16, 1980

### APPEARANCES OF COUNSEL

*Bernard Burstein* of counsel *(L. Kevin Sheridan,* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellants.

*Arthur A. Snyder* of counsel *(Mitchell & Yancey,* attorneys), for respondent.

**OPINION OF THE COURT**

KUPFERMAN, J.

This action to recover damages sustained by the original plaintiff, Victor J. Whitree, alleging malicious prosecution, false imprisonment and negligence, was commenced on December 27, 1962. In 1945, Whitree pleaded guilty to assault, received a suspended sentence and was placed on probation. In April, 1947, he was arrested for violation of probation pursuant to a warrant procured by his probation officer, and brought to the prison ward of the psychiatric division of Bellevue Hospital, allegedly without a hearing. Thereafter, it is contended, there was no arraignment on the violation charge nor any notice to appear in court. On May 19, 1947, Whitree was committed to Matteawan State Hospital, although he was allegedly without representation by counsel and did not personally appear when the commitment order was issued. Whitree remained continuously confined at Matteawan until he was ordered released to the Department of Correction on September 8, 1961 pursuant to a writ of habeas corpus. His general release followed on October 3, 1961, after a delay occasioned by a contention by an Assistant District Attorney (not a city official) of pending criminal charges.

Following his general release, Whitree commenced two actions, one against the State of New York in the Court of Claims, and this action against the City of New York in 1962. Whitree received a judgment in his action against the State *(Whitree v State of New York, 56 Misc 2d 693)* for $300,000 (thereafter settled for $200,000 in 1969) for malpractice and negligence in caring for him while he was institutionalized at Matteawan. Inasmuch as Whitree had claimed that proper psychiatric care would have resulted in his release many years prior to 1961, the Court of Claims observed that included in the damages relatable to the cause of action for malpractice would be damage due to false imprisonment for in excess of 14 years. *(Whitree v State, supra, at p 695.)*

In 1970, plaintiff moved for summary judgment, and there was a cross motion to dismiss and for summary judgment by the city. In denying both motions, Special Term ruled that issues of fact existed, such as whether plaintiff was represented by counsel who did not oppose commitment. Special Term also noted the city's contention that now, in 1970, six years after joinder of issue, essential witnesses were not readily available.

Between 1970 and November 26, 1974, when the action was marked off the calendar, one of the plaintiff's original attorneys had died, trial counsel who had presented the 1970 summary judgment motion withdrew, and in April 1974, Mr. Whitree himself died leaving no close surviving relatives. Whitree's last will left his estate to several charities.

The case was marked off the calendar for want of a plaintiff, but without prejudice to being restored when an order substituting the executor was obtained. The order to that effect was entered in December, 1974 and served with notice of entry on Whitree's remaining attorney of record. That order effectively removed him as counsel, but without prejudice to an application by his firm to fix their fee. The order also directed turnover of the case files to the preliminary executor, who is also the present executor. As of December, 1974, the way was clear to proceed with the action.

In moving to restore the case to the calendar in 1979, some five years later, plaintiff's counsel, who happens also to be the 1974 counsel of record, relies on his involvement in a contest over Whitree's will and difficulty in obtaining trial counsel as reasonable excuses for the delay.

CPLR 3404 deems abandoned an action marked off the calendar and not restored within a year. To restore an action requires an acceptable excuse and an evidentiary showing of merit. (Cf. *Mingis v Daitch Crystal Dairies*, 32 AD2d 746.) It is a showing similar to that necessary to defeat a motion under CPLR 3216, to dismiss for failure to prosecute. *(Gwertzman v Cobb*, 60 AD2d 644.)

. Then Associate Justice BREITEL commenting upon the "flexible, interrelated factors" applicable to determine whether delay in going forward with an action was excusable, has stated that, "defendants are entitled to be free, after reasonable opportunity for plaintiffs to establish the contrary, of the burden of defending actions which possess little or no merit, *or even of defending actions of merit but too long delayed."* *(Sortino v Fisher*, 20 AD2d 25, 27, 28; emphasis added.) The extent of delay must be deemed substantial under the circumstances of the case, including the periods elapsing between the date of accrual of the cause of action and the date when issue was joined. *(Sortino v Fisher, supra*, at p 28.)

In the instant case, we encounter a situation where the cause of action accrued in 1961 arising out of events occurring in 1946. The action against the State of New York was

resolved in 1969. The availability of witnesses was already a problem noted in the last activity before a court in 1970. Here the extraordinary delay involves 12 years before the case was marked off, plus an additional number of years before new trial counsel was obtained. The original plaintiff has died and left no close family surviving who would benefit from a second recovery. It seems also that the two principal residuary beneficiaries of Whitree's will, both charities, have not indicated an interest in pursuing the action.

Counsel's proffered excuses for delay after Whitree's death are insufficient under the totality of circumstances here. The substituted plaintiff, the executor, aware of the dismissal, did not take further action until seemingly prodded by the original counsel of record. The difficulties—such as they were—of the present counsel of record are irrelevant, as he was not attorney or counsel between December, 1974 and March, 1979. No excuse is even suggested for the delay by the executor and his attorney during this period. Indeed, the present attorney of record says, "During this entire time, the Executor refused to permit me to proceed in the civil case".

The delays attributable to the obtaining of suitable trial counsel amount to nothing more than possible law office failure. These internal difficulties have been held to be insufficient to justify delay, certainly delay of this magnitude. (Monahan v Fiore, 71 AD2d 914, 915, citing Sortino v Fisher, supra; cf. Barasch v Micucci, 49 NY2d 594, discussed in Siegel, NY St Law Dig, July, 1980, pp 1-2.)

Finally, although plaintiff's showing of merit is not without significance, we have noted the sizeable recovery from the State to the unfortunate victim during his lifetime. To permit a second suit, which might ultimately benefit only reluctant beneficiaries, and to do so after such a long passage of time, solely for the sake of vindicating an alleged wrong committed in the distant past, does not, in our opinion, serve the ends of justice.

The order of the Supreme Court, New York County (SCHWARTZ, J.) entered September 5, 1979, which vacated a dismissal of the action and restored it to the calendar, should be reversed on the facts and the law and in the exercise of discretion, and the motion to restore to the calendar should be denied, without costs and without disbursements.

MARKEWICH, J. (dissenting). In the unique—almost bizarre

—circumstances of this case and its background, the order of restoration was a valid unexceptionable exercise of discretion, with which we should not interfere. The previous history of this case reflects its basic merit, found even by the majority to be "not without significance." Nor is it an appropriate reason to reverse that there was heretofore a "sizeable recovery from the State to the unfortunate victim during his lifetime." What this expression misses completely is that even such a belated doing of justice to this now deceased victim of official insensitivity should serve as a warning to those who would repeat the pattern—and this aspect is far more important than an award of money could ever be. I dissent and would affirm.

MURPHY, P. J., and SILVERMAN, J., concur with KUPFERMAN, J.; MARKEWICH, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on September 5, 1979, reversed, on the facts and the law, and in the exercise of discretion, and the motion to restore to the calendar is denied, without costs and without disbursements.