OPINION OF THE COURT
Jerome L. Reinstein, J.
An apparently still unsettled question in this State is the standard of proof which should govern the prosecutor’s burden of establishing the mental condition of a criminal defendant found not responsible by reason of mental disease or defect under the recently enacted Insanity Defense Reform Act of 1980 (L 1980, ch 548). Mr. Bellacosa, in his Supplementary Practice Commentaries to amended CPL 330.20 (McKinney’s Cons Laws of NY, Book 11A, Pocket Part 1980-1981, CPL 330.20, p 16), presumes that such burden is “civil in nature and therefore preponderance [of the evidence]” suffices; a view shared by one court (People v *1090 Plaksin, 107 Misc 2d 696), but rejected by another (Matter of Rose, 109 Misc 2d 960).[1]
For the reasons hereinbelow stated, this court agrees with Rose (supra) that the clear and convincing standard of proof governs these proceedings.
Defendant was accused of the crimes of burglary in the first degree, assault in the second degree and criminal possession of a weapon in the fourth degree. After a non-jury trial he was found not responsible by reason of mental disease or defect.
Pursuant to the provisions of CPL 330.20, upon entry of said verdict an examination order was issued and defendant was examined by two qualified psychiatrists, Dr. Mark Vandenbergh and Dr. Paul Chellappa. Each psychiatrist’s report was submitted to the court; and both were of the opinion that the defendant is suffering from a dangerous mental disorder.[2]
An “initial hearing” in conformity with the statute (CPL 330.20, subd 6) was thereafter held. Doctors Vandenbergh and Chellappa testified as did the defendant’s expert, Dr. Robert Goldstein. Although not unanimous as to the precise nature of his illness, all three psychiatrists agreed that defendant is now mentally ill; but only Doctors Vandenbergh and Chellappa were of the view that he currently constitutes a physical danger to himself or others. Accordingly, the only real issue before the court is whether defendant has a dangerous mental disorder and should therefore be committed under CPL 330.20, or is only mentally ill and then civilly committed pursuant to the Mental Hygiene Law (see CPL 330.20, subds 6, 7).
Prior to the enactment of the Insanity Defense Reform Act of 1980 a person acquitted by reason of mental disease *1091 or defect who was no longer believed to be dangerous to himself or others could petition for discharge or release on condition, or such application could be made on his behalf by the Commissioner of Mental Hygiene (former CPL 330.20, subds 2, 5). The petitioner, under such prior law, bore the burden of proof by a fair preponderance of the evidence that he could be safely released. (Matter of Torsney, 47 NY2d 667; Matter of Lublin v Central Islip Psychiatric Center, 43 NY2d 341; but cf. Matter of Estes, 75 AD2d 451.)
In Addington v Texas (441 US 418), the United States Supreme Court concluded that the due process clause of the Fourteenth Amendment requires a “clear and convincing” standard of proof to civilly commit an individual involuntarily to a State mental institution.
Since the equal protection clause of the Fourteenth Amendment mandates that defendant be afforded the same procedural and substantive rights as one whose civil commitment is sought (cf. Baxstrom v Herold, 383 US 107; Jackson v Indiana, 406 US 715; People v Lally, 19 NY2d 27; Matter of Torsney, supra), the “clear and convincing” standard of proof is equally applicable to the instant proceeding.
In view of the fact that defendant does not seriously contest the contention that he is mentally ill, only the claim that because of such condition he currently constitutes a physical danger to himself or others, it may be argued that establishment of said condition by a lesser standard of proof would satisfy due process. This view could seemingly be further supported by the holding in Baxstrom (supra, p 111) that “[classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill at all”
However, there are several cogent reasons why a bifurcated standard of proof, one to adjudicate “mental illness” and another to determine “dangerous mental disorder”, should not be established.
*1092 First, to apply two different standards in the same fact-finding process would prove too unwieldy, tend to undermine the importance of the ultimate decision and undoubtedly confuse any jury which may be called upon to review a commitment order (see CPL 330.20, subd 16; Mental Hygiene Law, § 9.35). As the Supreme Court aptly noted in Addington v Texas (supra, pp 424-425), “[cjandor suggests that, to a degree, efforts to analyze what lay jurors understand concerning the differences among these three tests [preponderance of the evidence, beyond a reasonable doubt and clear and convincing] or the nuances of a judge’s instructions on the law may well be largely an academic exercise; there are no directly relevant empirical studies. Indeed, the ultimate truth as to how the standards of proof affect decisionmaking may well be unknowable, given that factfinding is a process shared by countless thousands of individuals throughout the country. We probably can assume no more than that the difference between a preponderance of the evidence and proof beyond a reasonable doubt probably is better understood than either of them in relation to the intermediate standard of clear and convincing evidence. Nonetheless, even if the particular standard-of-proof catchwords do not always make a great difference in a particular case, adopting a ‘standard of proof is more than an empty semantic exercise.’ * * * In cases involving individual rights, whether criminal or civil, ‘[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.’”
Second and more significantly, the State has chosen to differentiate, in place of confinement and statutory procedures between criminal acquittees found mentally ill and those found suffering from a dangerous mental disorder. The latter are to be confined in a secure facility for care and treatment with further proceedings governed by the complex and more restrictive provisions of the CPL, while the former are deemed civilly committed in accordance with the Mental Hygiene Law.[3]
These distinctions in label, place of confinement and procedural treatment are not inconsequential; particularly *1093 since, to paraphrase Addington (supra, pp 425-426), “it is indisputable that involuntary commitment [of a mentally ill person] to a [secure] mental hospital [under the CPL rather than to a less secure facility under the Mental Hygiene Law] after a [further] finding of probable dangerousness to self or others can engender adverse social consequences to the individual. Whether we label this phenomena ‘stigma’ or choose to call it something else is less important than that we recognize that it can occur and that it can have a very significant impact on the individual.”
In this court’s view these State-created distinctions, plus their stigmatizing consequences, are sufficient to constitute a kind of liberty deprivation which is entitled to the procedural protection of the due process clause (cf. Vitek v Jones, 445 US 480). And the process that is due is that the State be required to prove that the defendant suffers from a dangerous mental disorder (even if mental illness is not disputed) by clear and convincing evidence.
On the evidence adduced at the initial hearing the court finds that the People have proven, by clear and convincing evidence, that the defendant is presently suffering from a dangerous mental disorder.
Accordingly, a commitment order shall be issued committing the defendant to the custody of the State Commissioner of Mental Health for confinement in a secure facility for care and treatment for six months from the date thereof. Defendant, if he is so advised, may obtain a rehearing and review of this proceeding and said commitment order in accordance with the provisions of CPL 330.20 (subd 16) and section 9.35 of the Mental Hygiene Law, at which rehearing and review the clear and convincing standard of proof shall also be applicable.

. For a well-reasoned opinion rejecting the preponderance of evidence standard in an analogous juvenile delinquency proceeding see, also, Matter of Ralph M. (99 Misc 2d 828).

. “ ‘Dangerous mental disorder’ means: (i) that a defendant currently suffers from a ‘mental illness’ as that term is defined in subdivision twenty of section 1.03 of the mental hygiene law, and (ii) that because of such condition he currently constitutes a physical danger to himself or others.” (CPL 330.20, subd 1, par [c].)
“‘Mentally ill’ means that a defendant currently suffers from a mental illness for which care and treatment as a patient, in the in-patient services of a psychiatric center under the jurisdiction of the state office of mental health, is essential to such defendant’s welfare and that his judgment is so impaired that he is unable to understand the need for such care and treatment” (CPL 330.20, subd 1, par [d]).

. (See, generally, Comment, Reforming Insanity Defense Procedures in New York: Balancing Societal Protection against Individual Liberty, 45 Albany L Rev 679.)