OPINION OF THE COURT
Sybil Hart Kooper, J.
When Emma Lazarus invited the tired and the poor to this country it is certain that she did not mean to include the defendant, Mikhail Plaksin, a violent and homicidal inmate of the Leningrad Psychiatric Hospital.
On November 7, 1980, approximately five months after his arrival on our shores, Mikhail Plaksin appeared before me and entered a plea of “not responsible by reason of mental disease or defect”, pursuant to CPL 220.15. Plaksin had murdered his father-in-law with a hatchet and had similarly attempted to kill his wife, his young daughter, and his mother-in-law. Psychiatrists for both the defense and the prosecution had examined Plaksin, and all doctors agreed that he was suffering from a mental disease or defect. (Penal Law, § 30.05.)
The court-appointed psychiatrists also reported that Plaksin had been a patient in the Leningrad Psychiatric Hospital until shortly before he was permitted to migrate to this country, from the Soviet Union.
*697 After accepting Plaksin’s plea, the court issued an examination order. (CPL 330.20, subd 1, par [e]; subd 2.) The examination having been completed, Plaksin now stands before the court for his initial hearing. (CPL 330.20, subd 6.)
This is the court’s first case under the newly enacted version of CPL 330.20, which became effective September 1,1980 (L 1980, ch 548, § 11) and the court feels compelled to make certain observations concerning the new law.
1. THE BURDEN OF PROOF
Under the prior law, the Court of Appeals ruled, in Matter of Lublin v Central Islip Psychiatric Center (43 NY2d 341), that a defendant (or the Commissioner of Mental Hygiene, when appropriate) bore the burden of proving by a fair preponderance of the evidence, that the defendant could be released without danger to himself or others. In so holding, the court stated (p 344) that:
“It is beyond doubt that petitioner was both insane and dangerous at the time he murdered his wife and attempted to take his own life; indeed, it is only because of his insanity that he is relieved of criminal liability. Given the clear existence of this condition, as evidenced by the admitted commission of a violent act, it is appropriate that the condition be presumed to continue until the contrary is proved.
“The burden which is placed on petitioner is neither excessive nor novel, for the burden of proof is normally placed upon the party who is seeking affirmative relief’.
Later, in Matter of Torsney (47 NY2d 667), a plurality of the Court of Appeals slightly softened the presumption language so forcefully stated in Lublin (supra), but the Court of Appeals did not reverse or modify the Lublin rule on burden of proof.
Today, under the new law, it is the People who must establish to the satisfaction of the court that the defendant has a dangerous mental disorder or is mentally ill. (CPL 330.20, subd 6.) The statute is silent as to what that burden is. In his Practice Commentary to CPL 330.20, Joseph W. Bellacosa observes that the prosecutor’s burden *698 is presumably civil in nature. The court agrees and holds that the burden is on the People to prove by a preponderance of the evidence that the defendant suffers a dangerous mental disorder or is mentally ill.
However, in so holding, this court is mindful of the irony imposed upon us by the new statute. At trial, the People must prove that the defendant was sane at the time of his criminal acts in order to obtain a conviction. If the People fail, CPL 330.20 now forces the People to make a complete about face and prove that the defendant is not “sane” but has a dangerous mental disorder or is mentally ill and should not be released. The prosecutor is thus cast into the position of high school debaters who must prepare and prove both their affirmative and negative cases. Even more, the law now expects the prosecutor to follow the legendary story of the lawyer who tried both sides of the same issue in two separate cases and won them both. Here the prosecutor must do it in the same case. Why the Legislature adopted such a scheme escapes the logic of the court. Nonetheless, the court is bound by the law.
2. TRIAL PROCEDURE
Under the prior law, the Court of Appeals had long held that a defendant was entitled to a jury trial on the question of whether or not he should be released. (Matter of Torsney, supra; Matter of Lublin v Central Islip Psychiatric Center, supra; People ex rel. Henig v Commissioner of Mental Hygiene, 43 NY2d 334; People v Lally, 19 NY2d 27; Mental Hygiene Law, § 9.35.) There was no provision for the initial hearing now required by CPL 330.20 (subd 6).
The present law, by CPL 330.20 (subd 16), also provides that any defendant who is dissatisfied with the court’s ruling may, within 30 days, request a rehearing and review in accordance with the provisions of section 9.35 or 15.35 of the Mental Hygiene Law. Those sections would give the defendant the right to have his present mental condition decided by a jury. The statute is silent as to whether the defendant is entitled to a jury trial at the initial hearing. A “flow chart” submitted with the Law Revision Commission Report which recommended the new *699 CPL 330.20 indicates that a jury trial is available only at a rehearing. The court thus presumes that the defendant is not entitled to a jury trial at the initial hearing.
3. THE EVIDENCE
As of the date of this writing, the initial hearing mandated by CPL 330.20 (subd 6) is scheduled to begin on January 20, 1981.
The defendant has been examined by Dr. M. Boyar and Dr. N. Salgunan, psychiatrists employed by the Office of Mental Health. The doctors’ reports have been submitted to the court and both the People and defense counsel have agreed to stipulate the reports into evidence at the hearing and rest.
Dr. Boyar describes the defendant’s condition as schizophrenia, paranoid type, subchronic, paranoid personality disorder. He finds that the defendant is dangerous to himself and others.
Dr. Salgunan also finds the defendant’s condition to be schizophrenia, paranoid type, subchronic, paranoid personality disorder. He considers Plaksin to be mentally ill and dangerous. It is clear at this time that should no further evidence be offered at the hearing, the court will have to find that the defendant suffers from a dangerous mental disorder and that the People have met their burden of proof.
Plaksin has been before the court more than a dozen times, and a Russian language interpreter has been specially hired on each occasion at considerable expense. His family has attended many sessions of the court, frequently in tears, terrified that he might again be loosed upon them.
The defendant is, according to the new statute, due back before me under the initial commitment order (CPL 330.20, subd 6) in six months. At that time, the court is authorized to issue a first retention order (CPL 330.20, subd 1, par [g]; subd 8), committing the defendant for a period of one year, should the court find the defendant continues to suffer from a dangerous mental disorder. At the end of this one-year period, the defendant will then be *700 returned to court and the court must once again determine whether the defendant is suffering from a dangerous mental disorder. Should the court so find, then a second retention order (CPL 330.20, subd 1, par [h]; subd 9) would be issued, committing the defendant for a period of two years. Thereafter, at two-year intervals the court would be authorized to issue a subsequent retention order (CPL 330.20, subd 1, par [i]; subd 9).
The above presupposes that the court continues to find that the defendant has a dangerous mental disorder. Should the court, at any time, find the defendant to be merely mentally ill, then CPL 330.20 (subds 6, 7) requires the defendant to be civilly committed under the provisions of the Mental Hygiene Law and his release, although still up to the court having proper jurisdiction under the Mental Hygiene Law, would be controlled by the more liberal provisions of the civil commitment under the Mental Hygiene Law.
Mr. Plaksin is now 44 years old. Should he continue to be found to have a dangerous mental disorder, his periodic sojourns to the court for re-evaluation could well exceed this court’s term in office. Indeed, they could exceed this court’s life-span, and all the while, the defendant would be housed, fed, and supported by the taxpayers of this State.
Plaksin makes a mockery of Emma Lazarus and her inspirational words on the Statute of Liberty. It seems that America has become not only the land of opportunity, but the dumping ground for violent criminals of other nations at a time when we are already over burdened with our homegrown variety.