OPINION OF THE COURT
William C. Brennan, J.
This is a proceeding commenced by the Commissioner of Mental Health (the Commissioner) seeking a retention order for the defendant patient herein, Pesach Pasternack.
The defendant has been in the custody of the Commissioner pursuant to a commitment order dated November 21, 1963, which was issued under the provisions of former CPL 330.20, by the Queens County Supreme Court after a verdict of acquittal by reason of mental disease or defect.[1]
On or about August 19,1981 the Commissioner submitted an application for a retention order authorizing contin *318 ued custody of the defendant for a period not to exceed one year from the date such retention order takes effect.
On or about August 28, 1981 the defendant requested a hearing in this matter.
On September 23, 1981, upon the oral application of the District Attorney, joined in by counsel for the Mental Health Information Service (M.H.I.S.) representing the defendant, this court issued an order that the Attorney-General of the State of New York (Attorney-General) represent the Commissioner and that the Commissioner go forward with evidence supporting the application for the retention of the defendant.
Thereafter, the Attorney-General orally moved to vacate said order and the matter was adjourned for the parties to submit papers in support of their respective positions.
This court must now decide whether the Attorney-General, acting on behalf of the Commissioner of Mental Health, should be required to appear at the hearings conducted in conjunction with an application for retention.[2]
On June 26, 1980 Governor Carey signed into law chapter 548 of the Laws of 1980 commonly known as “The Insanity Defense Reform Act of 1980” (Act). This Act was created to “better ensure the protection of the public from future dangerous acts of individuals found not responsible, while safeguarding the rights of such individuals.” (Governor’s Approval Memorandum, NY Legis Ann, 1980, p 219.)
Section 11 of the Act repealed former CPL 330.20 and added a new CPL 330.20 (Procedure following verdict or plea of not responsible by reason of mental disease or defect) which became effective on September 1, 1980.
Relevant to this proceeding is CPL 330.20 (subd 8) regarding a first retention order. Since CPL 330.20 (subd 9), pertaining to second and subsequent retention orders, substantially parallels the language in CPL 330.20 (subd 8) this decision will apply equally as to both.
*319 CPL 330.20 (subd 8) reads as follows: “First retention order. When a defendant is in the custody of the commissioner pursuant to a commitment order, the commissioner must, at least thirty days prior to the expiration of the period prescribed in the order, apply to the court that issued the order, or to a superior court in the county where the secure facility is located, for a first retention order or a release order. The commissioner must give written notice of the application to the district attorney, the defendant, counsel for the defendant, and the mental health information service. Upon receipt of such application, the court may, on its own motion, conduct a hearing to determine whether the defendant has a dangerous mental disorder, and it must conduct such hearing if a demand therefor is made by the district attorney, the defendant, counsel for the defendant, or the mental health information service within ten days from the date that notice of the application was given to them. At such hearing, the district attorney must establish to the satisfaction of the court that the defendant has a dangerous mental disorder or is mentally ill. If the court finds that the defendant has a dangerous mental disorder it must issue a first retention order. If the court finds that the defendant is mentally ill but does not have a dangerous mental disorder, it must issue a first retention order and, pursuant to subdivision eleven of this section, a transfer order and an order of conditions. If the court finds that the defendant does not have a dangerous mental disorder and is not mentally ill, it must issue a release order and an order of conditions pursuant to subdivision twelve of this section.”
In the case at bar, the defendant was in custody prior to the effective date of the reform Act and comes within its purview via section 13 of said Act (L 1980, ch 548) which states: “The provisions of this act shall apply to all criminal actions and proceedings commenced prior to the effective date thereof but still pending on such date, except where application of such provisions would not be feasible or would work an injustice or would violate a defendant’s constitutional rights. When, on the effective date of this *320 act, any defendant remains confined in an institution under the jurisdiction of the commissioner of mental health or the commissioner of mental retardation and developmental disability pursuant to an order issued under former section 330.20 of the criminal procedure law or former section four hundred fifty-four of the code of criminal procedure, the procedures relating to continued retention, furlough, transfer, release and recommitment shall be in accordance with the provisions of this act, and, within one year of the effective date of this act the commissioner shall apply for a retention order to the supreme court of the judicial district or the county court of the county where the institution is located if the commissioner is of the view that the defendant’s condition warrants continued confinement.”
The crux of the problem presently before this court derives from the Legislature’s efforts to ensure that the public’s interests are taken into account at any hearing with respect to the retention or release of a defendant patient confined in a psychiatric center.
Former CPL 330.20 (subd 3)[3] provided that if the court was not satisfied that the committed person could be safely discharged or released it must promptly order a hearing to determine the issue and that “[a]ny such hearing shall be deemed a civil proceeding.” The statute made no reference to either the Attorney-General or the District Attorney and was silent as to the standard of proof required at such hearing.[4]
*321 The burden of going forward with the necessáry evidence at such hearings was placed upon the Attorney-General by virtue of such proceedings being deemed “civil” in nature (Matter of Torsney, 47 NY2d 667) and it was the defendant who bore the burden of proving by a preponderance of the evidence that he could be released without danger tq himself qr others. (Matter of Torsney, supra; Matter of Lublin v Central Islip Psychiatric Center, 43 NY2d 341; People v Plaksin, 107 Misc 2d 696.)
In fact, the District Attorney had to receive the court’s permission in order to participate in such proceedings. As the Appellate Division, Fourth Department, stated in Matter of Miller (46 AD2d 177, 183): “The commissioner initiated this proceeding to secure petitioner’s release. The Attorney-General would represent the commissioner and without the District Attorney present no one would represent the public, which certainly has a real interest and stake in the outcome of the application. We said in Matter of Miller (Lee) (46 A D 2d 999) that ‘the special interest which the public has acquired in the confinement and release of people in this exceptional class of acquitted persons results from the fact that there has been a judicial determination that they have already endangered the public safety and their own as a result of their mental conditions. The public acquires a special interest in their confinement and release, which therefore must be considered by the court. When consideration is being given to the release of such a person, that public interest must be weighed against his claimed right to be set free’.”
Subsequently the law was changed to mandate the District Attorney’s participation. (L 1980, ch 548.)
Under the new law it is the District Attorney who “must establish to the satisfaction of the court that the defendant has a dangerous mental disorder or is mentally ill.” (CPL 330.20, subds 6, 8, 9, 12.)
While the statute is clear that in each of the proceedings thereunder the District Attorney has a significant role to play it is vague, if not totally remiss, in defining the *322 District Attorney’s role as well as that of any of the other parties thereto.[5]
As noted in the Supplementary Practice Commentaries to CPL 330.20 (Bellacosa, McKinney’s Cons Laws of NY, Book 11A, CPL 330.20, 1981-1982 Pocket Part, p 16) “the prosecutor’s role is ambivalent at best and potentially conflicting, intellectually and practically.”
The role of the District Attorney under this “complex” statute (Bellacosa, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 330.20, 1981-1982 Pocket Part, p 15) has been further criticized by psychiatrists as well as attorneys.
“It is only the situation of the person charged with a violent crime, found ‘not responsible by reason of mental disease or defect,’ and determined to be both mentally ill and dangerous, that calls for distinctive release procedures. Even in this case, the district attorney should have no role whatever. A prosecutor simply has nothing to contribute to the decision-making process relative to release from medical care of one found not responsible * * *
“Where there is a dispute among the psychiatrists or where there is expressed the unanimous opinion that the patient should remain hospitalized, the patient would, at his option, have recourse to court in order to seek his discharge. This should be a civil proceeding and conducted by a judge other than the one who presided at the original trial and post-acquittal hearing. Those who seek to continue the inpatient status of the patient should have the burden of demonstrating that this is necessary. Inappropriate retention can only be viewed as punitive and, therefore, unacceptable. Preponderance of the evidence, rather *323 than the clear and convincing proof required for the involuntary civil patient, is the desirable standard to protect society. The law of Rhode Island, by shifting the legal role in these matters from the district attorney’s to the Attorney General’s Office represents a more realistic approach, emphasizing the civil, rather than the criminal nature of the proceedings.” (Halpern, Rachlin, Portnow, New York’s Insanity Defense Reform Act of 1980: A Forensic Psychiatric Perspective, 45 Albany L Rev 661, 675; emphasis supplied.)
In the instant case, the Attorney-General seeks to vacate this court’s order, that he appear at the retention hearing, contending that the language of CPL 330.20 (subd 8) places the responsibility for establishing the case for a retention order upon the District Attorney “thus precluding any role at the hearing for the Commissioner as the active litigator. This would also apply to the Attorney General, since his participation in any Court proceeding herein flows solely from his duty to represent the Commissioner.”
The Attorney-General further contends that the omission of the phrase “the commissioner is of the view” in CPL 330.20 (subds 8, 9) (retention orders) in contrast to the language in CPL 330.20 (subd 12) (release orders)[6] is to be interpreted to mean that the Commissioner need not, in fact does not, have an affirmative opinion as to the defendant patient’s mental condition when applying to the court for a retention order.
The Attorney-General argues that:
“In contrast to the language in subd. 12, which requires an affirmative belief in order to request a release order, there is no pre-requisite belief which the Commissioner must arrive at before making application for retention.* The only standard is that it must be sought prior to the expiration of an existing commitment order. Thus, were the Commissioner to lack an affirmative opinion as to release or retention, nevertheless, he would be bound by *324 the terms of the statute (subd. 8 of CPL § 330.20) to apply to the Court for a retention order. His duty in this respect amounts to nothing more than a ‘ministerial’ function.
* “Even in those applications in which there is an expression of opinion, it is an entirely gratuitous act, since this is neither required nor contemplated by the statute.” (Attorney-General memorandum of law, pp 6-7 [footnote in original].)
The court rejects'these arguments.
The duties of the Attorney-General are spelled out in section 63 of the Executive Law which provides in relevant part:
“The attorney-general shall:
“1. Prosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel, in order to protect the interest of the state * * * No action or proceeding affecting the property or interests of the state shall be instituted, defended or conducted by any department, bureau, board, council, officer, agency or instrumentality of the state, without a notice to the attorney-general apprising him of the said action or proceeding, the nature and purpose thereof, so that he may participate or join therein if in his opinion the interests of the state so warrant.”
The Attorney-General’s reliance on Matter of Miller (46 AD2d 177, supra) and Matter of Miller (46 AD2d 999) to support his position that he is not required to appear at a retention hearing is misplaced.
In Miller (46 AD2d 177, supra) the petitioner defendant, seeking release under former CPL 330.20, alleged that the trial court erred in permitting the District Attorney to appear in the proceedings while not requiring the Attorney-General to represent the Commissioner. The appellate court found no merit in the petitioner’s position stating (p 183): “The commissioner initiated this proceeding to secure petitioner’s release. The Attorney-General would represent the commissioner and without the District Attorney present no one would represent the public, which certainly has *325 a real interest and stake in the outcome of the application.” (Emphasis supplied.)
It is clear from the foregoing that the Attorney-General was not absolved from his responsibilities at the release hearing but, in fact, would be joined by the District Attorney who had a legitimate interest to represent in such situations.
Likewise, in Miller (46 AD2d 999, supra) the Appellate Division cited the special interest which the public has acquired in the confinement and release of defendants found not guilty by reason of insanity. (Former CPL 330.20.) In finding the District Attorney-a proper party to participate fully in behalf of the People at a hearing for the defendant’s release the court noted that (p 1000): “Normally, of course, the Attorney-General would represent the People in a case affecting the public interest. Here, however, by law the Attorney-General represents the commissioner who is the petitioner, and, indeed, for that reason the Attorney-General recommended to Special Term that the District Attorney be authorized to appear and represent the People at the hearing * * * [I]t is an appropriate extension of the duties of the District Attorney that he be authorized to represent the special public interest in the present application.” (Emphasis supplied.)
Here again, the court did not relieve the Attorney-General of his responsibilities but allowed the District Attorney to participate in the hearing upon the recommendation of the Attorney-General.
By analogy, in the matter before this court, the District Attorney is required by law to be a party to the retention proceedings and is recommending that the Attorney-General be present to represent the State’s special interests.
Simply stated, there are four parties that have a direct interest in the outcome of a hearing upon an application for retention: (1) the Commissioner (represented by the Attorney-General) who initiates the proceedings by filing the application with the court and represents the facility in which the defendant is confined; (2) the District Attorney who must establish to the satisfaction of the court that the defendant has a dangerous mental disorder or is mentally *326 ill; (3) the defendant (who may be represented by his own counsel), and (4) Mental Health Information Service which is charged with the responsibility of assisting the defendant and informing him as to the procedures for retention and of his right to judicial hearing and review, the right to counsel and the right to seek independent medical opinion. (See Mental Hygiene Law, § 29.09, subd [b], pars 1, 2.)
The court finds that the role of the Commissioner with respect to the defendant’s proposed retention is more than just ministerial. Had the Legislature intended that the Commissioner merely notify the interested parties that he is seeking retention of the defendant without more, it would not have required the Commissioner to “apply to the court * * * for a first retention order” (CPL 330.20, subd 8; emphasis supplied.)
When the statutory time arrives for the Commissioner to apply to the court for such an order he is at the cross roads to choose between retention or release (i.e., “fish or cut bait”). To accept the Attorney-General’s rationale that the Commissioner has no affirmative opinions with respect to the defendant’s retention would lead this court to believe that the Commissioner’s actions are nothing more than arbitrary and capricious — a direct violation of the defendant’s constitutional rights. (Jackson v Indiana, 406 US 715; Matter of Torsney, 47 NY2d 667, supra.)
Section 13 of the reform Act (L 1980, ch 548) clearly states that “within one year of the effective date of this act the commissioner shall apply for a retention order to the supreme court of the judicial district or the county court of the county where the institution is located if the commissioner is of the view that the defendant’s condition warrants continued confinement.” (Emphasis supplied.)
Moreover, paragraph 6 of the Commissioner’s application (Form A A) provides: “This application is made upon the ground that the undersigned is of the view that the above-named defendant” (emphasis supplied). Appended to the application are clinical/psychiatric reports in support of this “view”.
Thus, the court finds that the Commissioner does, in fact, have an opinion as to defendant’s retention and that *327 there is no merit to this portion of the Attorney-General’s argument as grounds for the Commissioner’s nonappearance.
Logic and common sense, in addition to the law, dictate that the Commissioner be a party to the proceeding herein. He is the chief spokesman for the State’s mental health facilities and has a special interest that must be represented.
The Commissioner is charged with the responsibility of providing the defendant with the proper care and treatment while in his custody. This responsibility exists even when the defendant is released. “If the court finds that the defendant does not have a dangerous mental disorder and is not mentally ill, it must issue a release order and an order of conditions pursuant to subdivision twelve of this section.” (CPL 330.20, subd 8.)
CPL 330.20 (subd 12) provides that: “It shall be the responsibility of the commissioner to determine that such defendant is receiving the services specified in the written service plan and is complying with any conditions specified in such plan and the order of conditions.”
Failure to carry out these responsibilities subjects the State to potential lawsuits. (Whitree v State of New York, 56 Misc 2d 693; see, also, Shea v City of New York, 77 AD2d 21.)
Finally, with respect to the distinction between the burden of proof and the burden of going forward with the evidence there is no dispute that, the District Attorney bears the burden of proof to establish the defendant’s mental condition and this burden never shifts. The burden of going forward with the evidence, on the other hand, will shift from party to party during the course of the hearing. (See Richardson, Evidence [10th ed], §§ 95, 96.)
The Commissioner, having initiated this proceeding by submission of his application for a retention order, is hereby directed to go forward with the evidence.[7]
*328 The court does not, however, feel compelled to establish the degree of evidence that the Attorney-General must present initially, as these parameters may vary from hearing to hearing.
The sensitive decision of whether a defendant, confined in a psychiatric center as a result of a plea or verdict of not responsible by reason of mental disease or defect, is to be retained or released ultimately rests with the court. As the court in Miller (46 AD2d 177,179, supra) stated: “In such a situation great reliance must be had not only on the testimony of experts but of any person or circumstances which can guide one to the best possible, informed decision.” (Emphasis supplied.)
The court and the Commissioner of Mental Health must work together to see that the needs of all the interested parties herein are properly dealt with. This spirit of cooperation was mandated by the Legislature in the implementation of GPL 330.20. “The state commissioner of mental health and the chief administrator of the courts shall implement section eleven of this act by jointly adopting rules respecting the scope of the psychiatric examinations prescribed by such section, the data to be furnished the psychiatric examiners, and the form and content of examination reports and applications and orders filed and issuable under such section.” (L 1980, ch 548, § 12; emphasis supplied.)
To allow the Commissioner to sit back and become a spectator rather than an active participant in these proceedings, which he has commenced before this court, would deny the court, the defendant, the public and the State an opportunity to reach best possible decision for all concerned.
Accordingly, the Attorney-General’s motion to vacate this court’s order, dated September 23, 1981, is denied in all respects.

. The defendant was indicted for arson in the first degree under this indictment number and received a nonjury trial before the Honorable Peter T. Farrell on January 3, 7 and 22, 1974. He was found not guilty by reason of insanity and committed to the custody of the Commissioner of Mental Hygiene to be placed in an appropriate State institution, and safely kept in custody and detained until he may be released. The defendant is presently confined in the Creedmoor Psychiatric Center.

. The court has been advised by the District Attorney that the Attorney-General has raised the identical arguments herein in similar matters presently pending in Kings and Suffolk Counties and, further, that those matters have been adjourned pending this court’s resolution of the issues.

. Former CPL 330.20 (subd 3) provides: “If the court is satisfied that the committed person may be discharged or released on condition without danger to himself or others, the court must order his discharge, or his release on such conditions as the court determines to be necessary. If the court is not so satisfied, it must promptly order a hearing to determine whether such person may safely be discharged or released. Any such hearing shall be deemed a civil proceeding. * * * After such a hearing, the committed person must be discharged, released on such conditions as the court determines to be necessary, or recommitted to the commissioner of mental hygiene. The commissioner of mental hygiene must make suitable provision for the care and supervision by the department of mental hygiene of persons released conditionally under this section.”

. Case law held that the standard of proof to determine the mental condition of a defendant under former CPL 330.20 was “clear and convincing” since-the equal protection clause of the Fourteenth Amendment mandated that the defendant be afforded the *321 same procedural and substantive rights as one whose civil commitment was sought. (People v Escobar, 110 Mise 2d 1089, citing Baxstrom v Herold, 383 US 107; Jackson v Indiana, 406 US 715; People v Lally, 19 NY2d 27; Matter of Torsney, 47 NY2d 667.)

. The statute even neglects to set forth the standard of proof by which the District Attorney must “establish” the mental condition of the defendant patient, leaving the courts divided as to whether they should be governed by a preponderance of the evidence (People v Plaksin, 107 Misc 2d 696) or clear and convincing evidence (Matter of Rose, 109 Misc 2d 960; People v Escobar, 110 Misc 2d 1089). See, also, Supplementary Practice Commentaries to CPL 330.20 by Joseph W. Bellacosa in which he finds the prosecutor’s burden to be civil in nature and therefore preponderance. (McKinney’s Cons Laws of NY, Book 11 A, CPL 330.20, 1981-1982 Pocket Part, pp 15-16.) This issue is not presently before this court and the court, therefore, will take no position on the subject at this time.

. CPL 330.20 (subd 12) states in pertinent part: “The commissioner may apply for a release order, pursuant to this subdivision, when a defendant is in his custody pursuant to a retention order or recommitment order, and the commissioner is of the view that the defendant no longer has a dangerous mental disorder and is no longer mentally ill.” (Emphasis supplied.)

. In People v Benjamin (Indictment No. 4725, Queens County), the Attorney-General was ordered to appear and to go forward with the evidence at a retention hearing. At the subsequent hearing before the Honorable W. Eugene Sharpe in *328 February, 1982, the Office of Mental Health was represented by an Assistant Attorney-General “who was heard in support of the said application”.